*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0273p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

PERLEAN GRIFFIN; DWAYNE MOREHEAD,
                                   *Plaintiffs,*

GARY L. DAUGHERTY,
                          *Plaintiff-Appellant*,

        *v.*

CARLTON S. FINKBEINER, Mayor, City of
Toledo; CITY OF TOLEDO,
                          *Defendants-Appellees.*

No. 10-3659

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 3:08-cv-1032—Jack Zouhary, District Judge.

Argued: April 17, 2012

Decided and Filed:  August 20, 2012

Before:  SUHRHEINRICH, MOORE, and CLAY, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Emily J. Lewis, LAW OFFICES OF EMILY LEWIS, LLC, Dublin, Ohio, for Appellant. Adam Wade Loukx, CITY OF TOLEDO LAW DEPARTMENT, Toledo, Ohio, for Appellees. **ON BRIEF:** Emily J. Lewis, LAW OFFICES OF EMILY LEWIS, LLC, Dublin, Ohio, for Appellant. Adam Wade Loukx, Ellen Grachek, CITY OF TOLEDO LAW DEPARTMENT, Toledo, Ohio, for Appellees.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge. Plaintiff-Appellant Gary Daugherty appeals the district court's grant of summary judgment in favor of Defendants-Appellees City of Toledo and Toledo's former Mayor Carlton Finkbeiner (collectively, "the City") on Daugherty's Title VII and Ohio state-law race-discrimination claim and the district

1

court's grant of the City's motion in limine to exclude certain "other acts" evidence that Daugherty argues is relevant to his Title VII and Ohio state-law retaliation claim. Daugherty also appeals the grant of judgment as a matter of law in favor of Finkbeiner. Because the district court applied the incorrect standard by requiring Daugherty to meet an additional step beyond the *McDonnell Douglas* framework, we REVERSE the grant of summary judgment on the discrimination claim. Because the district court improperly based its evidentiary ruling solely on whether the same decisionmaker was involved in Daugherty's termination and in the "other acts," we also REVERSE the grant of the City's motion in limine as an abuse of discretion. In light of these holdings, we REVERSE the grant of judgment as a matter of law in favor of Finkbeiner.

## I. BACKGROUND

Daugherty worked for the City of Toledo as a manager in the Environmental Services Division ("ESD") of the Department of Public Utilities ("DPU") from January 2006 to March 2007, when he was fired. At the ESD, Daugherty managed brownfield redevelopment projects for the City. At numerous times during his tenure, Daugherty informed his supervisor and other city officials that he believed he was underpaid and that he was paid less than white managers. Daugherty's annual salary was $48,500, his white predecessor had earned an annual salary of $56,000, and his white subordinate earned an annual salary of $49,000. Daugherty spoke with ESD Commissioner Casey Stephens, DPU Director Robert Williams, mayoral Chief of Staff Robert Reinbolt, and Mayor Carlton Finkbeiner about the pay issue. Finkbeiner once informed Daugherty that Daugherty would receive a raise if he did something "exceptional." Daugherty also assisted Affirmative Action Director Perlean Griffin in conducting a pay study, which reported a disparity in salary between certain black male managers (including Daugherty) and white male managers.[1] Daugherty never received a pay raise.

In 2006, Daugherty assisted two black DPU employees with discrimination complaints against the City. ESD Commissioner Stephens and DPU Director Williams

---

[1]Griffin was formerly a co-plaintiff in this case, but has settled with the City.

told Daugherty not to speak with Griffin about discrimination complaints; Stephens told Daugherty that assisting with discrimination complaints was not part of his job duties. Human Resources Director Teresa Gabriel also told Daugherty to stop talking to Griffin; Gabriel complained to Daugherty that a particular complaint with which he had assisted should have gone to Human Resources instead of Affirmative Action.

According to Daugherty, he was also treated differently than white employees in other aspects of his job. He contends that City officials evaluated his work more harshly than the work of white employees and that, despite his position as second-in-command at the ESD, he was not placed in charge when Commissioner Stephens was absent.

Daugherty also alleges that Finkbeiner used racially derogatory language at meetings attended by the directors of the various City departments on multiple occasions and otherwise disrespected black employees.[2] Daugherty alleges that Finkbeiner stated that blacks lack parenting skills, black men cannot hold jobs or take care of their families, black women just want to have babies and collect welfare, and black ministers are pimps. At a Director's meeting, Finkbeiner complained that black employees lack drive and professionalism. He once commented, "thank God I was not raised poor and black," and referred to then-Fire Chief Michael Bell (who is black) as "King Kong." Finkbeiner told Youth Commission Co-Director Dwayne Morehead (who is black) to "get out of the lazy mode" and, comparing him to white female employees, said "is that a black stain on the glass ceiling?" At one staff meeting, Finkbeiner yelled at Morehead to sit down when he attempted to leave to go to the restroom, even though several white attendees had left without comment from Finkbeiner. When Morehead recommended that the City hire Morlon Harris, who, like Morehead, is a black man, to serve as Morehead's co-director of the Youth Commission, Finkbeiner responded that "the good old boys on the 22nd floor would not want two black employees running the

---

[2] Finkbeiner denies making many of these remarks. Because we are reviewing a grant of summary judgment, we describe the disputed facts in the light most favorable to Daugherty as the non-moving party.

department" and did not hire Harris.[3]  The only racially tinged remark that Daugherty alleges that Finkbeiner made directly related to Daugherty was telling Griffin that Daugherty was "lazy."

In late 2006 or early 2007, Finkbeiner held a meeting with several City department directors (including Williams) in which he expressed concern that City employment was "top heavy" and recommended that the directors reduce the number of administrative positions.  The directors produced lay-off lists, which they presented to the mayor and his chief of staff.  As part of the 2007 budget, the City eliminated thirty-nine positions, including Daugherty's position.  Of these eliminations, only six resulted in an employee losing his or her job; the remainder involved vacant positions or reassignments.  Daugherty's termination letter stated that the funding for his position had been cut from the budget.  According to Daugherty, however, his position was largely funded by external grants rather than through the City's operating budget.  A few days after Daugherty received the termination letter, Finkbeiner told Daugherty that he had been terminated because he "d[id]n't bust his ass enough."

The City describes Daugherty's termination as part of a reduction in force and states that he was not replaced.  By contrast, Daugherty contends that, six to eight months after he was fired, the City promoted a white employee, Marissa DeLancey, to work on brownfield projects and paid her an equivalent salary to what Daugherty had earned.  DeLancey was not, however, given the same title as Daugherty had held.

In April 2008, Daugherty filed suit against the City under Title VII and the Ohio Civil Rights Act, alleging that his termination was an act of race discrimination and retaliation and that the City constituted a hostile work environment for black employees. In February 2010, the district court granted the City's motion for summary judgment on the discrimination claim, but denied summary judgment on the retaliation claim.  As to the race-discrimination claim, the district court held that Daugherty had made out a prima facie case and had presented evidence that the City's proffered reason for his

---

[3]The phrase "the 22nd floor" is apparently a well-known Toledo metonym for the mayor's office, which is located on the twenty-second floor of One Government Center in downtown Toledo.

termination (budgetary constraints) was pretextual.  The court noted that the City and Finkbeiner gave inconsistent reasons for the termination, with the termination letter referencing budgetary constraints and Finkbeiner citing poor performance; further, the record showed that Daugherty's position was largely funded by grants, suggesting the budgetary-constraint rationale for the termination lacked factual support.

Nonetheless, the district court granted summary judgment for the City.  After Daugherty presented evidence of a prima facie case and pretext, the court held, "there is a final hurdle for Daugherty to overcome:  he must offer some evidence that the *real* reason for his termination was discrimination."  R.34 at 7 (Dist. Ct. Op.).  The court concluded that Daugherty had no evidence that the City's proffered reason for his termination was pretext for discrimination because the evidence in the record of potential racial bias had no connection to the decision to terminate Daugherty.  The district court similarly held that, without evidence that race was at least a factor in the termination, Daugherty could not succeed on his discrimination claim under a mixed-motive analysis.  The court did not expressly address Daugherty's hostile-work-environment claim.

Prior to trial on the retaliation claim, the City filed a motion in limine to exclude testimony from Griffin regarding the discharges of three other city employees who Griffin contended also engaged in protected conduct.  Griffin had stated in her affidavit that three of the five other employees terminated in March 2007 had filed complaints with the affirmative action office or charges with the Ohio Civil Rights Commission.  One of these employees—Theresa Graven—worked in the DPU, but the other two—Marisol Iberra and Kristy Bollis—worked in other departments.  The City also sought to exclude evidence from Griffin and Morehead regarding their own terminations.  Griffin was to testify that she was retaliated against and ultimately fired as a result of filing a report and probable-cause recommendation after investigating a race/retaliation complaint against City officials.  Morehead was to testify that Finkbeiner had told him that he would lose his job if he continued talking to Griffin and that he was ultimately demoted and terminated after refusing to sever ties with Griffin.  The City argued that this evidence was inadmissible under Federal Rules of Evidence 401, 403, and 404.

The district judge postponed ruling on the motion until after hearing testimony at trial, though he raised concerns that admitting evidence about other employees would result in a series of mini-trials regarding the circumstances of each termination and thus cause undue delay and confusion of the issues. The district judge explained that the evidence regarding other employees would not be relevant without testimony or other evidence linking the decision to fire Daugherty to the decisions to fire the other employees, such as a common decisionmaker. The judge stated that, in order to rule on admissibility, he would "need to know whether the same person made the decision, and[,] . . . if the answer is yes, who is that person." R.70 at 16 (Motion Hr'g Tr.). Daugherty promised to present evidence that Finkbeiner was the common decisionmaker in each termination. The hearing also contained the following exchange between the court and counsel for the City:

> MR. BYERS: Your Honor, our understanding is that unless and until there's a foundation laid connecting Mayor Finkbeiner personally to the decision for the layoff of Mr. Daugherty's job, Mr. Morehead's testimony will not come in; is that correct?
> THE COURT: I think that's correct.

*Id.* at 11.

At trial, DPU Director Williams testified that he made the decision to terminate Daugherty after being told to eliminate some of the DPU's administrative positions. Both Williams and Assistant Chief of Staff David Moebius testified that lay-off proposals were presented to Finkbeiner and his staff. Daugherty testified that Assistant Chief of Staff Donald Moline told him that the termination decision came from "upstairs" (which the district court assumed meant the floor where the mayor and his staff worked) rather than from Williams.

After hearing this testimony, the district court concluded that Daugherty had not shown a sufficient link between the various alleged retaliatory terminations to admit evidence regarding the termination of the other employees. Specifically, the court held that the evidence did not support Daugherty's argument that Finkbeiner was involved with each termination decision. Without such a link, the court granted the City's motion

in limine and excluded Griffin and Morehead's testimony.  The court also granted Finkbeiner's motion for judgment as a matter of law and dismissed him as a party.[4]  The jury found in favor of the City.

Daugherty timely appealed, arguing that the district court should have denied summary judgment on his race-discrimination claim under either a single-motive or a mixed-motive theory and should have admitted Griffin and Morehead's testimony as "other acts" evidence relevant to his retaliation claim.  He also contends that the district court erred by failing to conduct a hostile-work-environment analysis and by granting judgment as a matter of law to Finkbeiner on the retaliation claim.

## II.  ANALYSIS

### A.  Standard of Review

We review de novo a district court's grant of summary judgment.  *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 523 (6th Cir. 2007).  At the summary-judgment stage, the district court must view the evidence in the light most favorable to the non-movant and resolve all factual disputes in his favor.  *Id.* at 520 n.1 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  We also review de novo the grant of a motion for judgment as a matter of law.  *Jackson v. FedEx Corporate Servs., Inc.*, 518 F.3d 388, 391–92 (6th Cir. 2008).  Judgment as a matter of law is warranted "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a)(1).

We generally review a district court's evidentiary rulings for an abuse of discretion, which occurs when the court "'relies on clearly erroneous findings of fact, improperly applies the law, or employs an erroneous legal standard.'"  *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 748 (6th Cir. 2005) (quoting *Beck v. Haik*, 377 F.3d 624, 636 (6th Cir. 2004)) (alterations omitted).

---

[4]The parties refer to the district court's grant of a "directed verdict," which is an outdated term. We instead use the current terminology of "judgment as a matter of law."  *See* Fed R. Civ. P. 50.

**B.  Race Discrimination—Single-Motive Framework**

The parties dispute whether the district court applied the proper standard in granting summary judgment to the City on Daugherty's race-discrimination claim. Specifically, Daugherty contends that the district court erred by requiring that he "offer some evidence that the *real* reason for his termination was discrimination" in addition to the evidence supporting his prima facie case and a showing of pretext.  R.34 at 7.  We agree.

Under the familiar *McDonnell Douglas* burden-shifting framework for single-motive discrimination claims, a Title VII plaintiff utilizing circumstantial evidence must first make out a prima facie case of discrimination by showing "1) that he was a member of a protected class; 2) that he was discharged; 3) that he was qualified for the position held; and 4) that he was replaced by someone outside of the protected class." *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009) (citing *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008)).  After the plaintiff has made out a prima facie case of discrimination, the employer must present a legitimate, nondiscriminatory reason for the termination.  *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009).  The burden of production then shifts back to the plaintiff to show that the employer's proffered nondiscriminatory reason was pretext.  *Id.*

As described above, after finding that Daugherty had made out a prima facie case of race discrimination[5] and that Daugherty had shown that the City's proffered reasons for the termination may have been pretextual, the district court stated that "there is a final hurdle for Daugherty to overcome:  he must offer some evidence that the *real*

---

[5]The district court did not expressly determine that Daugherty had made out a prima facie case, holding instead that issues of fact existed as to the fourth element—whether Daugherty was replaced by a white employee.  The result is the same:  summary judgment is inappropriate at the first stage of the *McDonnell Douglas* analysis.  We have described the district court's role in evaluating a motion for summary judgment on a Title VII claim as "'determin[ing] if a plaintiff has put forth sufficient evidence for a reasonable jury to find her to have met the prima facie requirements.'"  *Blair*, 505 F.3d at 528 n.10 (quoting *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000)).

reason for his termination was discrimination." R.34 at 7.**6** The district court thus required Daugherty to introduce additional evidence beyond the evidence necessary to support a prima facie case and a showing of pretext in order to survive summary judgment.

In *Reeves v. Sanderson Plumbing Products, Inc.*, the Supreme Court held that judgment as a matter of law for the defendant in an employment-discrimination case may be appropriate under certain circumstances even if the plaintiff has made out a prima facie case of discrimination and has shown pretext. 530 U.S. 133, 148 (2000). In other circumstances, however, a prima facie case and a showing of pretext can support a jury verdict for the plaintiff. *Id.* at 147–48. "[B]ecause a prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability, [a court] err[s] in proceeding from the premise that a plaintiff must always introduce additional, independent evidence of discrimination." *Id.* at 149. Applying the rationale of *Reeves* to the summary-judgment context, we have held that "to survive summary judgment a plaintiff need only produce enough evidence to support a prima facie case and to rebut, but not to disprove, the defendant's proffered rationale." *Blair*, 505 F.3d at 532.

The district court thus erred in assuming that Daugherty had to produce additional evidence of discrimination in order to survive summary judgment. Summary judgment for the defendant may be appropriate even after the plaintiff has presented evidence that the defendant's proffered reason for the termination was false "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that

---

**6**This statement was not made in the context of the district court's discussion of the prima facie case and thus does not appear to be a reference to the requirement that, in reduction-of-force cases, a plaintiff must present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons" as part of his prima facie case. *Barnes v. GenCorp., Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). Instead, the district court described its requirement of "evidence that the *real* reason for his termination was discrimination" as a "final hurdle" after the prima facie case and pretext stages. The City thus mischaracterizes the district court's opinion in its appellate brief by describing the opinion as holding that Daugherty failed to make out a prima facie case under *Barnes*. *See* Appellee Br. at 18–20. At oral argument, the City correctly noted that the district court held that Daugherty had made out a prima facie case of discrimination.

no discrimination had occurred." *Reeves*, 530 U.S. at 148. The district court did not consider any of these factors, but instead, contrary to *Reeves*, "proceed[ed] from the premise that a plaintiff must always introduce additional, independent evidence of discrimination" after showing pretext. *Id.* at 149.

*Virts v. Consolidated Freightways Corp. of Delaware*, 285 F.3d 508 (6th Cir. 2002), the case that the district court cited for the proposition that a plaintiff "must offer some evidence that the *real* reason for his termination was discrimination," is not to the contrary. Indeed, *Virts* is not particularly relevant, because we did not need to decide in that case whether the plaintiff had sufficient evidence to survive summary judgment; his Title VII claim was properly dismissed because he had already been made whole following a successful grievance proceeding. *See id.* at 522. We observed in passing that "'[a] reason cannot be proved to be a pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason,'" *id.* at 521 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)), a quote from the Supreme Court's opinion in *St. Mary's Honor Center v. Hicks*. The question in *Hicks* was whether a showing of pretext "mandates a finding for the plaintiff," 509 U.S. at 504, which is a different question from what a plaintiff has to show to survive summary judgment.

The ultimate question of fact in a Title VII race-discrimination case is, of course, whether the defendant discriminated against the plaintiff on the basis of race. Racial animus is not the only inference that can be drawn from evidence that the proffered reason for an adverse employment action was pretext. Evidence that the employer's proffered reason for the termination was not the actual reason thus does not mandate a finding for the employee, *Hicks*, 509 U.S. at 511, but is enough to survive summary judgment, *see Blair*, 505 F.3d at 532. The jury can decide whether racial animus was the actual reason for Daugherty's termination.

## C.  Race Discrimination—Mixed-Motive Framework

Alternatively, the district court erred in granting summary judgment on Daugherty's race-discrimination claim because Daugherty has also presented sufficient evidence to proceed under a mixed-motive theory.  *See* 42 U.S.C. § 2000e-2(m).[7]

To defeat summary judgment on a discrimination claim under a mixed-motive analysis, the plaintiff must "produce evidence sufficient to convince a jury that:  (1) the defendant took an adverse employment action against the plaintiff; and (2) race, color, religion, sex, or national origin was *a* motivating factor for the defendant's adverse employment action."  *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 400 (6th Cir. 2008) (internal quotation marks omitted).  The evidence of discrimination can be direct or circumstantial.  *Id.* at 398 (citing *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92 (2003)).  Moreover, the burden of producing such evidence "is not onerous and should preclude sending the case to the jury only where the record is devoid of evidence that could reasonably be construed to support the plaintiff's claim."  *Id.* at 400 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

Daugherty contends that the evidence he presented of a discriminatory atmosphere in the workplace is sufficient evidence that race was at least a factor in his termination.  In particular, Daugherty points to the evidence of Finkbeiner's numerous racially insensitive statements. These statements are sufficient evidence of racial animus only if they have some connection to the decision to terminate Daugherty.  *See Blair*, 505 F.3d at 525.  The fact that the statements do not specifically mention Daugherty

---

[7]Although the City challenged whether Daugherty's claim should be analyzed under a mixed-motive framework before the district court, it did not do so in its appellate brief and has thus waived the issue.  *See, e.g.*, *United States v. Archibald*, 589 F.3d 289, 298 n.7 (6th Cir. 2009) ("[I]ssues not raised in appellate briefs are deemed waived." (internal quotation marks omitted)).  The fact that the City raised the issue at oral argument does not change this result.  *See Geiger*, 579 F.3d at 621 n.3 (treating as "likely waived" an issue raised for the first time in appellate oral argument).

We note that single-motive and mixed-motive theories are not distinct claims, but rather different ways of analyzing the same claim.  Even though we determine that Daugherty's race-discrimination claim survives summary judgment under either theory, therefore, "[a]t some point in the proceedings, of course, the District Court must decide whether [the] case involves mixed motives" or a single motive.  *Price Waterhouse v. Hopkins*, 490 U.S. 228, 247 n.12 (1989) (plurality opinion).  This decision may not always occur before the summary-judgment stage, because the nature of an employment-discrimination case "'will often emerge after discovery or even at trial.'"  *Harris v. Giant Eagle, Inc.*, 133 F. App'x 288, 296 n.4 (6th Cir. 2005) (unpublished opinion) (quoting *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 856 n.7 (9th Cir. 2002) (en banc), *aff'd*, 539 U.S. 90 (2003)).

means only that they are not direct evidence of discrimination; they could still be circumstantial evidence of discrimination. *See id.* at 525–26. Indeed, we have held that "[c]ircumstantial evidence establishing the existence of a discriminatory atmosphere at the defendant's workplace in turn may serve as circumstantial evidence of individualized discrimination directed at the plaintiff." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 356 (6th Cir. 1998). In determining whether discriminatory comments are circumstantial evidence of discrimination in a particular case, we consider factors such as the identity of the speaker, the nature and substance of the comments, and the temporal proximity of the comments to the challenged decision. *See id.* at 354–57.[8]

Generally, discriminatory comments can qualify as evidence that a particular decision was discriminatory if the speaker was "in a position to influence the alleged decision." *Id.* at 355. The parties dispute what direct role Finkbeiner had in the decision to terminate Daugherty, with the City contending that Williams was the sole decisionmaker. As the mayor, however, Finkbeiner "was in a position to shape the attitudes, policies, and decisions of the division's managers, including [Williams]," *id.*, just as "'[w]hen a major company executive speaks, everybody listens in the corporate hierarchy,'" *id.* (quoting *Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 546 (3d Cir. 1992)). Moreover, Finkbeiner admitted in his deposition that he signs off on all termination decisions, including Daugherty's:

> Q: Did you have discussions with anybody about the lay off, the decision to lay off Mr. Daugherty?
> A: [Finkbeiner] All lay offs, eventually the names—there aren't that many in total, we're not talking about hundreds of people, I think there might have been fifteen to eighteen, twenty-five maximum in that round of lay offs, so ultimately I see names of the people on a list that are being laid off so I don't know that there was a personal discussion about Gary's, but I'm, I'm quite confident that a list of the people that were being prepared to get their pink slips was put in front of me at some point in time prior to their getting those pink slips.

---

[8]The district court cursorily rejected Daugherty's argument that incidents of racial bias by City officials were evidence that his termination was based on race, stating only that "most involve other employees and have no connection to the decision to terminate Daugherty." R.34 at 7. The court should have engaged in the more thorough analysis described in *Ercegovich*.

Q: Okay.  So you had to approve the lay-off list?
A: I suppose that's, that's—yeah, I suppose that's accurate.
Q: Okay.
A: Sign off on the lay off list is another way of putting it.

R.23 at 78–79 (Finkbeiner Dep.).

In certain circumstances, even statements by a non-decisionmaker can be probative evidence of discrimination, such as when the speaker holds a management position, the statements are commonplace or made in a relevant context (such as a meeting in which personnel decisions are made), or where other evidence of animus exists. *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 393 (6th Cir. 2009); *Ercegovich*, 154 F.3d at 356–57.  Finkbeiner was clearly in a management position, made some of his comments in staff meetings attended by the Department heads, and was part of the group tasked with producing lay-off lists.

Even if made by a relevant speaker, "'[i]solated and ambiguous'" comments will not support a finding of discrimination. *Ercegovich*, 154 F.3d at 355 (quoting *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993)).  While Finkbeiner's comments unambiguously relate to race, only some of them refer to race in the context of employment.  Nonetheless, other alleged comments—most notably that black employees lack professionalism and drive—seem particularly striking evidence of bias against black workers.  Finally, Finkbeiner's comments carry more probative weight because of the other evidence of pretext. *Id.* at 356.  As the district court found, Daugherty presented evidence of pretext by showing that the City gave inconsistent reasons for his termination and that the proffered reason of budgetary constraints may have lacked a factual basis. *See Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (identifying "the proffered reasons did not *actually* motivate [plaintiff's] discharge" and "the proffered reasons had no basis *in fact*" as ways of showing pretext).

Although much of the evidence does not relate directly to Daugherty's termination, the burden at the summary-judgment stage is not onerous. *See White*, 533 F.3d at 400.  Combined with evidence that the City's proffered reason for Daugherty's termination was pretext, this circumstantial evidence of a discriminatory

atmosphere at the workplace is enough to raise an issue of fact as to whether race was at least a motivating factor in the termination decision and thus to survive summary judgment under a mixed-motive analysis.

## D.  Hostile Work Environment

In its opinion granting the City's motion for summary judgment on Daugherty's discrimination claims, the district court failed to address Daugherty's claim that he faced a hostile work environment.  It should do so on remand.  We express no view as to the merits of this claim, but leave it to the district court to address this claim in the first instance.

## E.  Retaliation

Daugherty contends that the district court abused its discretion in excluding proposed testimony from Griffin and Morehead regarding their own allegedly retaliatory discharges and proposed testimony from Griffin regarding the allegedly retaliatory discharges of three other City employees in spring 2007.  This challenge requires us to enter the unsettled evidentiary terrain of "other acts" or "me too" evidence.  First, however, we must address the City's argument that Daugherty failed to preserve this issue for appeal.

### 1.  Daugherty's Proffer

The City contends that Daugherty did not properly preserve this issue for appeal by failing to make an adequate proffer of the excluded evidence and why it was admissible.  In order to preserve a claim of error regarding the exclusion of evidence, a party must "inform[] the court of its substance by an offer of proof, unless the substance was apparent from the context."  Fed. R. Evid. 103(a)(2).  During the hearing on the City's motion in limine, Daugherty clearly informed the district court of the evidence he sought to offer (testimony from Griffin regarding alleged retaliation against Graven and Iberra and from Morehead regarding his own retaliatory termination) and why he believed it was relevant (other City employees who engaged in protected conduct were terminated around the same time as Daugherty).  Daugherty also addressed these matters

in his opposition to the City's motion in limine, and the substance of the proposed testimony was presented in affidavits from Griffin and Morehead. After briefing and two hearings on the issue, the district court was clearly familiar with the substance of the evidence and the arguments for and against its admissibility. This case is thus easily distinguishable from cases like *Barner*, for example, in which the plaintiff failed to preserve his objection when he never argued before the district court that the excluded evidence should be admitted as a statement against interest, but instead raised the issue for the first time on appeal. 399 F.3d at 748–49. Moreover, the City's contention that "there was no proffer of evidence that would connect [other employees'] complaints . . . to the respective decision-makers on the respective lay-offs," Appellee Br. at 17, goes to the merits of the admissibility issue, not the adequacy of the proffer.

The one exception is testimony from Griffin regarding her own termination. Although Daugherty argues on appeal that this testimony was admissible, he did not address the substance of this evidence at the motion hearing and, in his opposition to the City's motion in limine, stated that he "d[id] not intend to introduce Griffin's testimony about her own wrongful discharge and retaliation case." R.51 at 3. Because Daugherty disclaimed any intent to introduce this evidence at trial, and thus did not make a proffer as to its substance or admissibility, he cannot argue on appeal that the district court erred in excluding it, unless he can show that the exclusion was plain error. *See* Fed. R. Evid. 103(e).

Because Daugherty failed to make an adequate proffer of this evidence, we review its exclusion for plain error. "To show plain error, a defendant must establish the following: '(1) error, (2) that is plain, and (3) that affects substantial rights.'" *United States v. Arnold*, 486 F.3d 177, 194 (6th Cir. 2007) (en banc) (quoting *United States v. Cotton*, 535 U.S. 625, 631 (2002)). If these three conditions are satisfied, we can address the error if we find, in our discretion, that "'the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (quoting *Cotton*, 535 U.S. at 631). As described below, the exclusion was error, because it was based on the wrong standard. In light of contrary Supreme Court precedent, the error was plain. However,

we cannot conclude that the exclusion of evidence regarding Griffin's termination affected Daugherty's substantial rights or otherwise seriously affected the fairness of the trial when Daugherty himself stated in his opposition to the City's motion in limine that he did not intend to introduce such evidence and conceded that Griffin's case "does not have direct relevance to Daugherty's claims."  R.51 at 3.

### 2. "Other Acts" Evidence

In the employment-discrimination-law context, "other acts" evidence consists of testimony or other evidence of discrimination by the employer against non-party employees.  The Supreme Court has instructed lower courts not to apply a per se rule excluding "other acts" testimony from non-parties alleging discrimination by supervisors who did not play a role in the challenged decision.  *Sprint/United Mgmt. Co. v. Mendelsohn* ("*Sprint*"), 552 U.S. 379, 380–81, 387 (2008).  Whether such evidence is relevant is a case-by-case determination that "depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Id.* at 388.[9]

Here, the district court improperly focused exclusively on whether the same person made each allegedly retaliatory personnel decision.  The court correctly noted that "other acts" evidence "must be logically or reasonably tied to the decision made with respect to [Daugherty]," R.70 at 12, but looked only to the existence of a common decisionmaker as the necessary tie.  As described above, the court premised its admissibility ruling on "whether the same person made the decision" to fire Daugherty as made the decision to fire the other employees, *id.* at 16, and, specifically, "whether there's . . . any evidence that Finkbeiner played a role in the decision to terminate Mr. Daugherty," *id.* at 8.  After determining that Daugherty had failed to connect each

---

[9]The City relies heavily on our decision in *Schrand v. Federal Pacific Electric Co.*, 851 F.2d 152, 156 (6th Cir. 1988), in which we deemed inadmissible under Federal Rules of Evidence 401 and 403 testimony from two non-party former employees who worked in different divisions, in different cities, and for different supervisors than the plaintiff; the two employees alleged that they were both told they were fired because of their age.  *Schrand* was decided well before *Sprint*, of course.  Even prior to *Sprint*, we distinguished *Schrand* when the other discriminatory conduct occurred in closer proximity to the plaintiff. *See Robinson v. Runyon*, 149 F.3d 507, 514 (6th Cir. 1998); *McCabe v. Champion Int'l Corp.*, No. 89-4021, 1990 WL 156104, at *5–6, *9 (6th Cir. Oct. 18, 1990) (unpublished opinion).

decision to Finkbeiner, the court announced that it would exclude Griffin and Morehead's "other acts" testimony.

Whether the same actors are involved in each decision is a factor, but *Sprint* makes clear that it cannot be the only factor in the decision whether to admit "other acts" evidence. Notably, the testimony in *Sprint* involved supervisors "who played no role in the adverse employment decision challenged by the plaintiff." 552 U.S. at 380. Here, the district court did not consider other ways in which the excluded evidence could be "related . . . to the plaintiff's circumstances and theory of the case," *id.* at 388, such as temporal and geographical proximity, whether the various decisionmakers knew of the other decisions, whether the employees were similarly situated in relevant respects, or the nature of each employee's allegations of retaliation. *Cf. Bennett v. Nucor Corp.*, 656 F.3d 802, 809–10 (8th Cir. 2011) (approving the district court's approach of evaluating whether each incident involved "the same place, the same time, the same decision makers, or whether it's such that the people who are making the decisions reasonably should have known about the hostile environment") (internal quotation marks omitted), *cert. denied*, 132 S. Ct. 1807 (2012); *Elion v. Jackson*, 544 F. Supp. 2d 1, 8 (D.D.C. 2008) (listing as factors "whether such past discriminatory behavior by the employer is close in time to the events at issue in the case, whether the same decisionmakers were involved, whether the witness and the plaintiff were treated in a similar manner, and whether the witness and the plaintiff were otherwise similarly situated").

The district court's error in excluding the evidence was not harmless. *See* Fed. R. Evid. 103(a) (a party challenging the exclusion of evidence must show that "the error affects a substantial right"). When determining if an evidentiary error is harmless, we have held that, "if 'one cannot say, with fair assurance, . . . that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.'" *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 409–10 (6th Cir. 2006) (quoting *DePew v. Anderson*, 311 F.3d 742, 751 (6th Cir. 2002)). Like most employment-discrimination plaintiffs, Daugherty relied largely on circumstantial

evidence to present his case of retaliation to the jury. In such cases, "each piece of evidence served to complete part of the puzzle of th[e] case" and the absence of any one piece may have influenced the jury verdict. *Robinson*, 149 F.3d at 515; *see also Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1103 (8th Cir. 1988) ("The effects of blanket evidentiary exclusions can be especially damaging in employment discrimination cases . . . ."). "Other acts" evidence can provide probative context to an individual employment decision, especially when, as here, the circumstances of that decision are already somewhat suspicious due to evidence of pretext that was sufficient to survive summary judgment. Under a proper analysis, the district court may have admitted the evidence regarding Morehead, Iberra, and Graven. This evidence may not have swayed the jury if it had been admitted, but we "cannot say, with fair assurance" that it could not possibly have done so. *Mike's Train House*, 472 F.3d at 409.

On remand, the district court should consider the other factors listed above[10] and conduct a more complete analysis of the relevance of Daugherty's "other acts" evidence. Similarly, the court should consider the admissibility of evidence regarding each employee individually rather than issue a blanket ruling as to all proposed "other acts" evidence. Because, as noted above, Daugherty did not properly preserve for appeal his objection to the exclusion of Griffin's testimony regarding her own termination, the district court need not address this evidence on remand.

If the district court determines on remand that the evidence is relevant under Rule 401, the court's Rule 403 and 404 analyses should also proceed on an individual basis as to the evidence related to each "me too" employee. For now, we make two observations. First, the district court's concern about mini-trials is legitimate, but would tend to exclude any "other acts" evidence, regardless of how closely related it is to the plaintiff's circumstances. Because "other acts" evidence can be admissible, this concern cannot, by itself, serve as blanket grounds for exclusion. Second, Rule 404 does not mandate exclusion of all such evidence. Although *Sprint* addressed only Rules 401 and 403, the Court's admonition against per se rules in this context logically extends to Rule

---

[10]We do not intend this list of factors to be exhaustive.

404 as well. Moreover, other courts have held that "other acts" evidence in employment-discrimination cases goes to the employer's motive or intent to discriminate, which is a permissible use of such evidence under Rule 404(b). *See Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1286 (11th Cir. 2008); *Nuskey v. Hochberg*, 723 F. Supp. 2d 229, 233 n.2 (D.D.C. 2010).

In closing, we note that we intimate no view on the ultimate admissibility of Daugherty's "other acts" evidence, but leave that determination to the district court, conducted under the proper analysis.

## F. Judgment As a Matter of Law

Finally, Daugherty challenges the district court's grant of judgment as a matter of law to Finkbeiner under Federal Rule of Civil Procedure 50. As the basis for its decision, the court cited a lack of evidence connecting Finkbeiner to the decision to terminate Daugherty.

The propriety of granting judgment as a matter of law depends on whether, based on the evidence, a reasonable jury could find in favor of the non-movant. Fed. R. Civ. P. 50(a)(1). Because we are remanding for a trial on Daugherty's race-discrimination claim and for reevaluation under the proper standard of whether Daugherty's "other acts" evidence should be admitted, the best course is also to reverse the judgment as a matter of law and the dismissal of Finkbeiner as a party. The district court granted judgment as a matter of law only as to Daugherty's retaliation claim, because the court had earlier (and erroneously) dismissed Daugherty's race-discrimination claim. In addition, the admission of additional evidence may affect the issue of whether a jury could find Finkbeiner individually liable and thus whether judgment as a matter of law in his favor is warranted.

One final matter warrants discussion. Neither the parties nor the district court addressed the issue of what a jury must find in order to hold Finkbeiner individually liable. An individual cannot be held personally liable for violations of Title VII. *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997). By contrast, individual

managers and supervisors can be held jointly or severally liable with their employer for their own violations of Ohio Revised Code § 4112, Ohio's anti-discrimination law. *Genaro v. Cent. Transp., Inc.*, 703 N.E.2d 782, 785 (Ohio 1999). Accordingly, Finkbeiner's individual-capacity liability can stem only from violations of Ohio law.[11]

Neither party addresses the fact that state law governs this issue. In their appellate briefs and before the district court, the parties dispute whether evidence exists that tends to show that Finkbeiner made the decision to terminate Daugherty. However, neither party cites any Ohio case or otherwise explains whether the federal standards are the same as the standards for personal liability under Ohio Revised Code § 4112. To interpret Ohio law, federal courts must look to decisions of the Ohio Supreme Court; when that court has not ruled on an issue, the federal court "must predict how the court would rule by looking to all the available data." *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001) (citing *Prestige Cas. Co. v. Mich. Mut. Ins. Co.*, 99 F.3d 1340, 1348 (6th Cir. 1996)). The district court did not engage in this predictive analysis.

Even if we were to agree with the district court that Daugherty has presented no evidence from which a reasonable jury could conclude that Finkbeiner made the decision to terminate Daugherty, judgment as a matter of law for Finkbeiner was inappropriate without a finding that such lack of evidence would defeat an individual-capacity retaliation claim under Ohio law.

### III. CONCLUSION

By requiring Daugherty to present more evidence than Supreme Court or Sixth Circuit caselaw requires in order to survive summary judgment under the *McDonnell Douglas* framework, the district court erred in granting summary judgment to the City on Daugherty's race-discrimination claim. Alternatively, the district court improperly granted summary judgment on that claim under a mixed-motive framework by failing

---

[11]Daugherty also brings suit against Finkbeiner in his official capacity. Whether Finkbeiner is liable in his official capacity is essentially inconsequential, as it would result only in vicarious liability for the City, and Daugherty also alleges that the City is directly liable.

to analyze adequately Daugherty's evidence of discriminatory comments by Mayor Finkbeiner. On remand, the district court should additionally conduct a hostile-work-environment analysis. The district court also abused its discretion in excluding testimony regarding other acts of alleged retaliation by the City when the court based its decision solely on whether the same person made each termination decision. Therefore, we REVERSE the grant of summary judgment on Daugherty's race-discrimination claim and REVERSE the grant of the City's motion in limine. In light of these holdings, we also REVERSE the district court's grant of judgment as a matter of law to Finkbeiner. We remand for further proceedings consistent with this opinion.