NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0694n.06

**Case No. 19-4101**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| PAMELA HARRIS, | ) | **FILED** |
|  | ) | Dec 15, 2020 |
| *Plaintiff-Appellant,* | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
|  | ) |  |
| CITY OF AKRON, OHIO, | ) |  |
|  | ) |  |
| *Defendant-Appellee.* | ) |  |
|  | ) |  |

BEFORE: COOK, BUSH, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. Pamela Harris, an African American female, was a seasonal employee for the City of Akron, for which she had worked since 1994. Harris filed several complaints against the City with the Equal Employment Opportunity Commission and Ohio Civil Rights Commission, alleging various instances of discrimination and retaliation. The only claim here pertains to her 2014 application for a permanent position as a landscaper. Harris claims that the City discriminated against her when it hired Mark Hodas, a Caucasian male, instead of her. But she cannot show an issue of material fact that would allow a reasonable jury to decide the case in her favor. Thus, we **AFFIRM** the district court's grant of summary judgment.

## I. Background

Pamela Harris, an African American female, was a temporary laborer for the City of Akron from 1994 until 2017. Her performance evaluations reflected a mixture of negative, neutral, and positive reviews throughout her time there. In 2013, Harris applied for a permanent position as a landscaper in response to the City's hiring notice. The City gave an examination to the applicants, and Harris placed seventh out of twelve. After three rounds of interviews, the City hired those who had scored first, third, and fourth on the exam.

For a fourth round of interviews, the City invited Harris, Mark Hodas, and Troy Cross. After Cross withdrew, the City added Patrick Goodhart to the list of interviewees. Kevin Miller and Paul Burnett interviewed Harris. She alleges that the interview lasted for less than fifteen minutes and that Miller commented that "he [already] had someone he wanted to hire for the job, but that person did not work overtime." (R. 32-13, PageID 369.) The City ultimately hired Mark Hodas, who had scored second on the exam. The City stated that it hired Hodas, in part, because of his previous work at a landscaping company and his experience with spraying herbicide.[1]

---

[1] Harris argues that Hodas' experience in herbicide spraying cannot provide the basis for summary judgment because it is hearsay, since Kevin Miller learned about the experience from Hodas in the interview. But the only use for this information is to show the hiring motive, which makes this evidence solely about the effect it had on the City officials. This means that it is not hearsay in this context. *See Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 379 (6th Cir. 2009).

In May 2018, Harris filed an amended complaint alleging age, race, and gender discrimination under Title VII, the Age Discrimination in Employment Act of 1967 (ADEA), and Ohio Revised Code § 4112.02(A). She alleged multiple instances of hiring and employment discrimination, and she also alleged retaliation in violation of Title VII based on an unrelated incident. After discovery, the City moved for summary judgment, which the District Court granted. On appeal, Harris raises only the race and gender discrimination claims arising from the 2013–2014 permanent landscaper selection.

Harris argues that the City discriminated against her when it gave a permanent landscaper position to a Caucasian male applicant instead of her. She points specifically to the fact that the City rejected Hodas three times before hiring him for the position, meaning that the City did not invoke its discretion to remove him from the eligibility list after three failed applications.[2] She also suggests that the City's previous rejection of Hodas even when he scored well means that the scores on the exams were not really the main motivating factor for hiring. She also notes that her interview was with two Caucasian males, that it was subjective and perfunctory, and that the City offered no records of the internal decision-making process. Finally, she argues that the City's decision to add a fourth applicant into the interview round deviated from normal City policy and further undermines the City's claim of neutrality.

---

[2] She did not allege how often the City exercised this discretion or that they had previously used this discretion in a discriminatory way.

The City responds by noting that, not only is the decision to exclude an applicant after three rejections a discretionary call, but that it was three distinct divisions that rejected Hodas before—specifically, the Parks Maintenance Division, the Highway Maintenance Division, and the Street Cleaning Division. They also state that adding the fourth candidate was in keeping with the "Rule of Three," which required them to certify a pool of three applicants.

## II. Standard of Review

We review de novo a district court's order granting summary judgment, affirming if the "depositions, answers to interrogatories, and admissions on file, together with the affidavits" show that no genuine issue of material fact exists and that "the movant is entitled to judgment as a matter of law." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584 (6th Cir. 2009) (quoting *Moses v. Providence Hosp. & Med. Ctrs., Inc.*, 561 F.3d 573, 578 (6th Cir. 2009)). We view the evidence in the light most favorable to the nonmoving party. *Id.* But the nonmoving party must provide evidence from which a rational trier of fact could find in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

When a party moving for summary judgment does not have the ultimate burden of proof, it must show a lack of evidence supporting the other party's case. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389–90 (6th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To survive summary judgment, the party with the ultimate burden must show more than "some metaphysical doubt as to the material facts." *Id.* at 390 (quotation marks and citation removed). This does not

allow the party to "rest upon its mere allegations or denials of the adverse party's pleadings," but requires it to "set forth specific facts showing that there is a genuine issue for trial." *Id.*

### III. Analysis

When a plaintiff uses circumstantial evidence to show discrimination, courts apply the *McDonnell Douglas / Burdine* framework. *See id.* at 391. That analysis starts with requiring the plaintiff to establish a prima facie case of discrimination. *Id.* If she does, then the employer must come forward with evidence of a legitimate, nondiscriminatory reason for the employment action it took. *Id.* Finally, if the employer does so, the plaintiff must show that the employer's proffered reason is merely a pretext for discrimination. *Id.* at 391–92. "Although the burdens of production shift, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 392.

### A. Prima Facie Case

A prima facie case requires four components: that the employee: 1) "is a member of a protected class"; 2) "was qualified for the job"; 3) "suffered an adverse employment decision"; and 4) "was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008).

The parties have agreed that Harris showed a prima facie case of discrimination because 1) she is an African American female, 2) she applied for and

did not receive the permanent landscaper position, 3) she earned a spot on the list of eligible candidates, and 4) a Caucasian male received the job. Establishing a prima facie case is not difficult, and it creates a "presumption that the employer unlawfully discriminated against the employee." *Wixson v. Dowagiac Nursing Home*, 87 F.3d 164, 169 (6th Cir. 1996) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). This presumption does not shift the burden of proof, but only the burden of producing some evidence of permissible motive. *See Burdine*, 450 U.S. at 256 n.8.

## B. Legitimate, Nondiscriminatory Reason

Once the plaintiff presents a prima facie case of discrimination, the burden of production falls on the defendant to articulate a "legitimate, non-discriminatory reason for the adverse employment action." *White*, 533 F.3d at 391. This is *not* a burden to "persuade the court that it was actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254. The defendant only has to present "clear and reasonably specific" reasons that will "frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." *Id.* at 258, 255–56.

The City explains that it hired Hodas because he had scored higher than Harris on the exam and ranked higher than she did on the eligibility list. And it specified Hodas' previous employment experience in landscaping companies as a reason to choose Hodas for the permanent landscaper position. These reasons meet the burden

to provide a legitimate, nondiscriminatory reason for its hiring decision under *Burdine*.

At this point, the presumption of discrimination "drops out" of this case. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). That is, the employer has met the burden of production, and the trial court focuses on whether the plaintiff can meet the burden of persuasion. To survive summary judgment, the plaintiff must produce enough evidence to "support a prima facie case and to rebut, but not to disprove, the defendant's proffered rationale." *Griffin v. Finkbeiner*, 689 F.3d 584, 593 (6th Cir. 2012) (citation removed).

### C. Pretext

We next turn to whether Harris has shown that the City's justifications are pretextual. Summary judgment may be inappropriate if the plaintiff rebuts the employer's proffered reasons. The prima facie case and showing of pretext alone could present a genuine issue of material fact for the jury because "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000).

But this is not always the case. If the plaintiff "created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," then summary judgment is appropriate. *Griffin*, 689 F.3d at 594 (quoting *Reeves,* 530 U.S. at 148). And even if the plaintiff shows pretext, summary judgment is warranted if

"the record conclusively revealed some other, nondiscriminatory reason for the employer's decision." *Reeves,* 530 U.S. at 148. This is because finding "pretext *for discrimination*" requires not only that the reasons are pretextual, but also that actual discrimination was the true motive. *See Hicks*, 509 U.S. at 516–19. In either case, "the moving party has the right to judgment without the expense of a trial when there are no issues of fact left for the trier of fact to determine." *Ackerman v. Diamond Shamrock Corp.,* 670 F.2d 66, 69 (6th Cir. 1982) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 284–88 (1968).

A plaintiff can expose an employer's proffered motives as pretext in three ways. The first is that the reasons "had no basis in fact," such as reasons that are purely concocted and conflict with the facts in the record. *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 654 (6th Cir. 2012) (quoting *Dubey v. Stroh Brewery Co.*, 185 Mich. App. 561, 565 (1990)). The second is when the reasons were "not the actual factors motivating the decision," as when an employer cites a facially valid reason as a mere coverup for its true discriminatory motives. *Id.* Finally, the reasons may be pretextual if they are "jointly insufficient to justify the decision." *Id.* We do not apply this test so rigidly as to obscure the ultimate question of pretext. *See Davis v. Cintas Corp.*, 717 F.3d 476, 492 (6th Cir. 2013). And to make the showing of pretext, the plaintiff must produce "sufficient evidence from which the jury could reasonably reject the defendants' explanation and infer that the defendants intentionally discriminated against him." *Upshaw*, 576 F.3d at 586 (alterations omitted) (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003)).

Harris' first claim—that Hodas was not really more qualified than she was and that the City chose him only because the alternative was a black woman—challenges the factual basis of the City's decision. Because this challenge pertains to the candidates' relative qualifications, Harris presents a factual dispute worthy of trial only if the evidence shows that "either (1) the plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former, or (2) plaintiff was as qualified as if not better qualified than the successful applicant, and the record contains other probative evidence of discrimination." *Rachells v. Cingular Wireless Emp. Servs., LLC*, 732 F.3d 652, 668 (6th Cir. 2013) (internal quotation marks removed) (quoting *Bartlett v. Gates*, 421 F. App'x 485, 490 (6th Cir. 2010)).

Nothing in the record suggests that Harris is a more qualified candidate. She does not dispute that her score on the exam was lower than Hodas' score and that he had relevant experience for the position that the City sought to fill. And some of Harris' performance reviews from her temporary position with the City were mediocre or negative, not unfailingly positive. Even if Harris were as qualified as Hodas, she would need "probative evidence of discrimination." *Rachells*, 732 F.3d at 668. This element is missing. The fact that the City had rejected Hodas in the past for other positions does not suffice. His prior rejections by separate divisions despite his high scores do not make those scores irrelevant to the decision of the City, through a different division, to eventually hire him.

Harris' second argument—that the interview was subjective and perfunctory, and that the City officials had already chosen another candidate—does not survive summary judgment either. In some cases, preselection of a candidate can support a finding of pretext. *Stokes v. Detroit Pub. Schs.*, 807 F. App'x 493, 503 (6th Cir. 2020) (citing *Goostree v. Tennessee*, 796 F.2d 854, 861 (6th Cir. 1986)). But preselection based on qualifications creates no Title VII problem. *See Goostree*, 796 F.2d at 861. Even if the City's interviewer said that he already had someone he wanted to hire, Harris has offered no evidence that the preselection predated the interviewer's knowledge of Hodas' qualifications, which would be permissible grounds for preselection. In fact, she submitted no evidence that the allegedly preselected candidate even was Hodas, rather than someone else who was ultimately not hired because he "did not work overtime."

Harris correctly notes that "subjective evaluation processes" can be a cover for discrimination and call for "close scrutiny" at times. *Grano v. Dep't of Dev. of City of Columbus*, 699 F.2d 836, 837 (6th Cir. 1983). But the process here was not all subjective. The City used the test scores to determine who to interview, and it would be reasonable to also use them for the ultimate hiring decision. What's more, using subjective criteria is "not illegal per se." *Id.* (affirming judgment for the defendant employer). Without more evidence than the subjectivity of the evaluation, a plaintiff does not raise a genuine issue of fact over pretext.

Finally, Harris' argument that adding the fourth applicant was wrongful also does not tend to show any of the three pretext indicators. She introduced no evidence

that the City had deviated from its policy. The City explained, in the record, that it added the "fourth" candidate to replace the dropped candidate and abide by the Rule of Three.

Only Harris' subjective belief that the interviewers acted for discriminatory reasons could turn the alleged actions here into a violation of Title VII. "Mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment. A court may not reject an employer's explanation of its action unless there is sufficient basis *in the evidence* for doing so." *Upshaw*, 576 F.3d at 587 (quoting *Brennan v. Tractor Supply Co.*, 237 F. App'x 9, 19–20 (6th Cir. 2007) (cleaned up)). Because Harris fails to show pretext, we affirm the summary judgment.

## Conclusion

Harris cannot show an issue of material fact that merits a jury trial. The City chose the second-place applicant over the seventh-place applicant. Harris gives no evidence that the choice was racially motivated. She is not so plainly superior to Hodas as to rebut the factual basis behind the City's reasons. She has presented no supporting evidence that tends to show that the facts the City asserts were not its true motivation. And all the facts taken in a light most favorable to her do not carry an inference of discrimination. Thus, we **AFFIRM**.