NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0504n.06

No. 22-3141

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

LABORERS' INTERNATIONAL
UNION OF NORTH AMERICA, Local
894,

     Plaintiff,

ALPHA SOUARE,

     Plaintiff-Appellant,

v.

KENNY/OBAYASHI V, A Joint Venture;
KENNY CONSTRUCTION COMPANY;
OBAYASHI CORPORATION,

     Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

FILED
Dec 07, 2022
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF
OHIO

OPINION

Before: BOGGS, STRANCH, and THAPAR, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Kenny Construction Company, Obayashi Corporation, and their unincorporated joint venture, Kenny/Obayashi V (collectively, "Kenny/Obayashi"), hired Alpha Souare, a Black man and Guinean immigrant, in early December 2017. He reported to the Ohio Canal Interceptor Tunnel Project in Akron, Ohio, where he worked for a single shift of construction work and was laid off, along with a group of other new employees that included white workers. Souare sued Kenny/Obayashi under Ohio law, alleging a claim for national origin discrimination and a claim for a hostile work environment based on race.[1] The district court granted Kenny/Obayashi's motion for summary judgment in full. Souare appeals.

---

[1] The other plaintiffs initially named in the complaint, including Laborers' International Union, Local 894, reached a settlement with Kenny/Obayashi, stipulated to dismissal of their claims with prejudice, and are no longer in the case.

Upon full review of the record and the parties' briefs, we are not persuaded that the district court erred. Based on the thorough analysis of the district court, issuing a detailed opinion of this court would be duplicative and serve no useful purpose. Accordingly, we **AFFIRM** the district court's judgment and adopt the reasoning of its Memorandum of Opinion and Order dated January 31, 2022, with one exception.

The district court did not fully address Souare's argument that his discrimination claim could be proven with direct evidence. It held only that, "[a]bsent direct evidence of discrimination," it "must employ the burden shifting framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." But intentional discrimination can be proved by either direct or circumstantial evidence, and "a plaintiff need only prove one or the other, not both." *See Hedrick v. W. Rsrv. Care Sys.*, 355 F.3d 444, 453 (6th Cir. 2004) (quoting *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348–49 (6th Cir. 1997)). We address here the statements that Souare identified on appeal and which he contends constitute direct evidence of national origin discrimination.

We review a district court's grant of summary judgment de novo. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit," and a genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "we do not judge credibility or weigh conflicting evidence; instead, we believe the evidence of the nonmoving party, and draw 'all justifiable inferences' in his favor." *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 507 (6th Cir. 2021) (quoting *Anderson*, 477 U.S. at 255). Ohio

Revised Code § 4112 claims are subject to the same standards as federal Title VII claims. *See Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio C.R. Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981).

The district court summarized the factual background in full and it need not be recounted here. *See Local 894 Laborers' Int'l Union of N. Am. v. Kenny/Obayashi V*, No. 5:19CV2221, 2022 WL 294839, at *1 (N.D. Ohio Jan. 31, 2022). On appeal, Souare points to the following three statements that he argues the district court should have treated as direct evidence of national origin discrimination:

- Night shift foreman Terry Quinn's statement: "I don't give a fuck about blacks. It's my way or the highway."
- A statement by another foreman, identified in the record only as "Curtis": "shit, ain't no African going to be on this ship."
- An unnamed, bald supervisor's statement: "this is not an African job."

Direct evidence of discrimination is evidence that "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003). The evidence "must establish not only that the plaintiff's employer was predisposed to discriminate on the [protected basis], but also that the employer acted on that predisposition." *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 488 (6th Cir. 2000). Critically, "[a]ny discriminatory statements must come from decisionmakers to constitute evidence of discrimination." *Geiger*, 579 F.3d at 620-21. "Generally, discriminatory comments can qualify as evidence that a particular decision was discriminatory if the speaker was 'in a position to influence the alleged decision.'" *Griffin v. Finkbeiner*, 689 F.3d 584, 595 (6th Cir. 2012) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 355 (6th Cir. 1998)).

Souare bears the ultimate burden of proving his discrimination claim, which requires facts that might support a finding that the individuals who made the alleged statements had decision-making authority or otherwise influenced Kenny/Obayashi's decision to terminate Souare. *See Geiger*, 579 F.3d at 620-21; *Griffin*, 689 F.3d at 595. To satisfy that standard, Souare points only to his claim that the speakers held the titles of "foreman" and "supervisor." Despite the district court's extension of the discovery deadline, Souare took only one deposition, and opposed summary judgment primarily by citing to written discovery responses that he did not sign.[2] Kenny/Obayashi deposed Souare, but Souare never deposed the foremen or supervisor who were said to have made the statements. Nor does the record contain the supervisor's name or official role.

The only individual that Souare has identified with any kind of decision-making authority is David Chastka, the person who helped him get hired by Kenny/Obayshi in the first place. But the record is clear that the bald supervisor who gave Souare his paycheck and told him not to come back—and who allegedly said, "this is not an African job"—was "not David Chastka." There is no evidence or even argument that this supervisor had any decision-making authority over Souare's termination. Moreover, Souare testified at his deposition that when he emailed Chastka following his termination, Chastka responded that "he was not there at that time." And Souare agreed that Chastka "didn't discriminate against [him] or harass [him] in any way." On this record, Souare has not sustained his burden.

To be sure, the statements Souare identifies are racist and xenophobic, and do not belong in the workplace. But isolated remarks made by non-decisionmakers do not qualify as *direct*

---

[2] The written discovery responses were signed only by his attorney, and not Souare himself. *See* Fed. R. Civ. P. 33(b)(3), (b)(5) (each interrogatory must be answered "fully in writing under oath" and be signed by the "person who makes the answers").

evidence of discrimination. *Geiger*, 579 F.3d at 620-21; *see also Johnson*, 319 F.3d at 865. The district court did not err in finding that the statements were not direct evidence of discrimination, but appropriately gave the statements due consideration in its circumstantial evidence analysis. *See Ercegovich*, 154 F.3d at 356. We therefore **AFFIRM** the judgment of the district court and adopt its opinion, with the above addition, as the opinion of this court.