*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0229p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JACKSON S. BRUMLEY; ALBERT E. BRUMLEY, JR.; THOMAS R. BRUMLEY; BILLY J. POCKRUS; W.J. BRUMLEY; KRISTI BRUMLEY LAXTON; MARK BRUMLEY; KERI BRUMLEY PILCHER;

            *Plaintiffs-Appellees*,

     *v.*

ALBERT E. BRUMLEY & SONS, INC.; INTEGRATED COPYRIGHT GROUP, INC.; ROBERT B. BRUMLEY,

            *Defendants-Appellants*.

No. 12-5386

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:08-cv-01193—Aleta Arthur Trauger, District Judge.

Argued: March 15, 2013

Decided and Filed: August 15, 2013

Before: KEITH, MARTIN, and COLE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Barry I. Slotnick, LOEB & LOEB LLP, New York, New York, for Appellants. Jennifer A. Lawson, LAWSON LAW OFFICE, PLLC, Nashville, Tennessee, for Appellees. **ON BRIEF:** Barry I. Slotnick, Jonathan N. Strauss, LOEB & LOEB LLP, New York, New York, for Appellants. Jennifer A. Lawson, LAWSON LAW OFFICE, PLLC, Nashville, Tennessee, for Appellees.

———————————

**OPINION**

———————————

BOYCE F. MARTIN, JR., Circuit Judge.  "Some glad morning when this life is o'er / I'll fly away / To a home on God's celestial shore / I'll fly away"—these are the opening lines of Albert Brumley, Sr.'s hit gospel song, "I'll Fly Away."  Unfortunately, Brumley Sr.'s death would lead to a familial dispute concerning ownership of the Song's copyright.

In 1975, Brumley Sr. assigned his interests in the Song's copyright to his sons Robert and William, and in 2006, Brumley Sr.'s four other children sought to terminate the 1975 Assignment.  Robert refused to recognize the termination as valid, and the Brumley heirs sued Robert in district court.  Robert claimed that the termination was invalid for two reasons: (1) Brumley, Sr. was not the statutory author of the Song; and (2) a 1979 assignment of interests in Brumley, Sr.'s songs by Brumley, Sr.'s widow prevented the Brumley heirs from later exercising their termination rights.  The district court conducted a jury trial on the statutory-author issue, and the jury determined that Brumley Sr. was indeed the statutory author of the Song.  Following the jury trial, the district court considered Robert's legal challenge to the Brumley heirs' exercise of their termination rights and held that the assignment by Brumley Sr.'s widow did not prevent the Brumley heirs from exercising their termination rights.

Robert appeals the jury determination as well as the district court's legal determination.  Regarding the jury trial, Robert appeals two evidentiary rulings that the district court made prior to the trial: (1) it admitted the transcript and recording of a 1977 conversation between Brumley Sr. and Brumley, Jr., one of the plaintiffs; and (2) it excluded two articles discussing Brumley, Sr.'s employment status at the time that he composed the Song.  For the following reasons, we AFFIRM the district court's evidentiary ruling concerning the 1977 conversation, we REVERSE the district court's evidentiary ruling regarding the two articles, and REMAND the case for further

proceedings.    We refrain from reaching Robert's appeal of the district court's determination that the Brumley heirs validly exercised their termination rights.

## I.

Brumley, Sr. began writing and composing "I'll Fly Away" in 1928 or 1929, and on September 15, 1932, the Hartford Music Company secured the initial copyright in the Song by publishing it in a songbook titled, "The Wonderful Message." In the 1940s, Brumley, Sr. formed a music-publishing company, Albert E. Brumley & Sons, to hold title to and exploit his own copyrights. In 1947, he purchased all of Hartford's assets, including the copyright in the Song. Brumley, Sr. renewed the copyright registration for the Song in 1960, and he continued to hold full rights in the Song through Brumley & Sons.

On December 18, 1975, Brumley, Sr. sold his interest in Brumley & Sons to William and Robert for $100,000. On December 31, 1975, Brumley, Sr. and his wife, Goldie, also executed a Bill of Sale that purported to sell personal property and an "Attached list of Copyright songs," to William and Robert. The list of songs does not appear in the record; nonetheless, it is undisputed that, as part of those transactions, Brumley, Sr. conveyed the publishing and exploitation rights in the Song to William and Robert. On November 15, 1977, Brumley, Sr. died, survived by Goldie and their six children. Brumley, Sr. bequeathed all of his property, including his interests in any copyrights, to Goldie. On May 17, 1979, Goldie executed another Bill of Sale, wherein she maintained that she was the "sole and rightful owner" of all of Brumley, Sr.'s songs and she purported to "grant, sell, assign, and transfer" to Brumley & Sons her rights in Brumley, Sr.'s songs for $1.00. The Agreement also conveyed to Brumley & Sons the rights to renew copyrights and "all rights to obtain renewals or copyrights in the future upon Works written or composed by [Brumley Sr.]." In 1986, Robert bought out William's share of Brumley & Sons for $240,000 plus interest, leaving Robert as the sole owner. Goldie died on July 10, 1988.

On or about April 14, 2006, the other four Brumley children (Jackson S. Brumley, Albert E. Brumley, Jr., Betty Brumley Pockrus, and Thomas Brumley)

delivered a timely Notice of Termination of Transfers and Licenses to Brumley & Sons, intending to terminate the 1975 transfer of rights in the Song from Brumley, Sr. to William and Robert. The effective date of the Termination Notice purports to be April 14, 2008, and the U.S. Copyright Office recorded the Termination Notice on July 13, 2006. Robert Brumley's efforts to resist the Termination Notice form the basis of this lawsuit.

On December 16, 2008, the Brumley heirs sued Robert Brumley, Brumley & Sons, and Integrated Copyright Group, Inc. after Robert's refusal to recognize the validity of the Termination Notice. Currently, the Brumley heirs consist of Brumley Sr.'s surviving children—Jackson S. Brumley and Albert E. Brumley, Jr.—and the surviving heirs of his deceased children—Thomas Brumley's surviving spouse, Betty Brumley Pockrus's surviving spouse, and William Brumley's four surviving children. At the district court, Robert argued that the Termination Notice was invalid for two reasons. First, he argued that Goldie exercised her termination rights by assigning her rights in the 1979 Bill of Sale, preventing the Brumley heirs from later exercising their termination rights. Section 304(d) of the Copyright Act provides that heirs can only exercise termination rights on a pre-1978 transfer one time. 17 U.S.C. § 304(d). Second, Robert claimed that Brumley, Sr. was an employee of the Hartford Music Company at the time that he created the Song and that the Song was a "work made for hire." The Copyright Act's termination provisions do not apply to works made for hire. 17 U.S.C. § 304(c).

Before the trial, the district court made evidentiary rulings related to the work-made-for-hire issue that are pertinent to this appeal and our decision today. First, Robert filed a motion in limine to exclude from evidence a recording and transcript of a 1977 conversation between Brumley, Sr. and Brumley, Jr. The conversation contains the following exchange:

> Brumley, Sr.: That's where I got started in the Hartford – that's where I got started in the Hartford Musical Institute, which is defunct now.
> Albert, Jr.: And which you own now, the old Hartford copyrights?

> Brumley, Sr.: Yea, I sold some of the songs including "I'll Fly Away" and two others for three dollars.

The district court denied Robert's motion and admitted the recording and transcript into evidence. During the pretrial conference on the motion, the district court acknowledged that the conversation was hearsay, but nevertheless admitted it into evidence pursuant to the residual exception to the hearsay rule found in Federal Rule of Evidence 807.

Second, the Brumley heirs filed a motion in limine seeking to exclude from evidence a number of newspaper and magazine articles, among other things, as inadmissible hearsay. Robert argued that the district court should admit the articles under the "ancient documents" exception to the hearsay rule found in Federal Rule of Evidence 803(16). The district court granted the motion in part, excluding the articles from evidence. Two of the articles—*Brumley is Ozark's Country/Gospel Songmaster*, by Paul Stubblefield, Music City News, April 1977 and *Albert E. Brumley Folk Composer*, by Bill Malone, Bluegrass Unlimited, July 1986—provided statements that Brumley, Sr. was a salaried employee of Hartford during the time that he wrote the Song.

The district court bifurcated the trial. There was a jury trial from November 16–18, 2010, solely on the issue of whether the Song was a work made for hire. At the close of the Brumley heirs' case, Robert asked the district court to rule in his favor on the work-made-for-hire issue as a matter of law, but the district court denied the motion. The jury concluded that Brumley, Sr. was the statutory author of the Song, meaning that the Song was not a work made for hire as that term is used in section 304(c) of the Act and that Brumley, Sr.'s heirs have termination rights under section 304(d).

Following the jury trial, remaining for the district court's consideration was Robert's legal challenge to the Brumley heirs' Termination Notice on the grounds that Goldie's 1979 Bill of Sale constituted the one and only legitimate exercise of termination rights. The district court held that Goldie's 1979 assignment did not constitute an exercise of termination rights and it recognized the Brumley heirs' Termination Notice as valid. Robert filed this interlocutory appeal, seeking this court's

review of the district court's determination regarding the validity of the Termination Notice.  Robert also seeks review of the district court's aforementioned evidentiary rulings, and of the district court's denial of his motion for judgment as a matter of law.

II.

We begin by addressing Robert's challenge to the district court's evidentiary rulings.  The trial court's evidentiary rulings are reviewed for abuse of discretion. *United States v. Taplin*, 954 F.2d 1256, 1258 (6th Cir. 1992).  Reversal is appropriate when the trial court "applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *United States v. Martinez*, 430 F.3d 317, 326 (6th Cir. 2005) (citation and internal quotation marks omitted).

The Brumley heirs sought to introduce the recording and transcript of a 1977 conversation between Brumley, Sr. and Albert Brumley, Jr.  During the conversation, Brumley, Sr. claims that he sold the Song to Hartford for three dollars.  Robert sought to exclude the recording and transcript as hearsay.  The district court admitted the evidence on the grounds that it fell under the residual hearsay exception found in Rule 807.  Rule 807 allows the admission of a hearsay statement that does not fall under the exceptions to hearsay found in Rules 803 and 804 if the statement meets four criteria: (1) the statement has equivalent circumstantial guarantees of trustworthiness, (2) the statement is offered as evidence of a material fact, (3) the statement is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts, and (4) admitting the statement will best serve the purposes of the Rules of Evidence and the interests of justice.  Fed. R. Evid. 807; *United States v. Gomez-Lemos*, 939 F.2d 326, 329 (6th Cir. 1991).  Robert argues that the district court erred in admitting the recording and transcript because the conversation lacked the circumstantial guarantees of trustworthiness equivalent to those in the enumerated hearsay exceptions.

In support of his argument, Robert relies on language from the Supreme Court's decision in *Idaho v. Wright*, 497 U.S. 805 (1990).  Specifically, Robert says that the

Supreme Court has stated that the theory underlying the federal hearsay exceptions is that "if the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility, then the hearsay rule does not bar admission of the statement at trial." *Wright*, 497 U.S. at 820. However, the Supreme Court made this statement in the context of a discussion of the "particularized guarantees of trustworthiness" required under the Confrontation Clause. *Id*. at 814–15. Incriminating statements that are admissible under exceptions to the hearsay rule are not admissible under the Confrontation Clause unless the statements meet particularized guarantees of trustworthiness. *Id*. The Supreme Court's requirement that the truthfulness of a statement be so clear that the test of cross-examination be of marginal utility is specific to the Confrontation Clause; thus, the requirement is inapplicable in this case.

There is a lack of Sixth Circuit case law on the residual exception's trustworthiness requirement outside of the context of the Confrontation Clause, but we believe that there are a numbers of factors indicating that the statements from the 1977 conversation have the requisite guarantees of trustworthiness. First, the statements should be considered more reliable than not given that Brumley, Sr. and Brumley, Jr. are father and son and not strangers. Second, there is no indication that Brumley, Sr. lacked capacity at the time that he gave the statement. One may argue that Brumley, Sr.'s memory might have been impaired due to the lapse of time between the Song's publication and the statement, but it is just as reasonable to assume that Brumley, Sr. would have accurately recalled the circumstances surrounding the creation of his most successful song despite the lapse of time. Third, Robert has not alleged that Brumley, Sr. was an untruthful person. Fourth, the statement is clear and unambiguous. Finally, the fact that Brumley, Jr. recorded the conversation adds an element of formality, which suggests that Brumley, Sr. may have given his statements added consideration. The district court did not abuse its discretion and err in admitting into evidence the statements from and transcript of the 1977 conversation.

The Brumley heirs sought to prevent Robert from introducing into evidence two articles: 1) Paul Stubblefield's article, *Brumley is Ozark's Country/Gospel Songmaster*, published in the April 1977 edition of Music City News; and 2) Bill Malone's article, *Albert E. Brumley Folk Composer*, published in the July 1986 edition of Bluegrass Unlimited. Both articles claimed that Brumley, Sr. was a salaried employee of Hartford at the time that he wrote the Song. Robert sought to introduce the evidence under the "ancient documents" exception to the hearsay rule. *See* Fed. R. Evid. 803(16).

As an initial matter, the Brumley heirs conceded that the articles are self-authenticating "newspapers and periodicals" pursuant to Federal Rule of Evidence 902(6). The district court found that the statements fall within the ancient documents exception because they are more than twenty years old and are authenticated. *See* Fed. R. Evid. 902(6). The district court also acknowledged that "the content of the document is a matter of evidentiary weight left to the sole discretion of the trier of fact," and, therefore, the factual accuracy of the statement is not pertinent when considering whether the hearsay exception applies. *United States v. Kalymon*, 541 F.3d 624, 633 (6th Cir. 2008). Finally, the district court noted that the challenged statements within the articles do not contain a potential "hearsay within hearsay" problem because the statements are simply the assertions of the articles' authors and do not quote or attribute statements to anyone else.

Still, the district court excluded the evidence based on its discretion under Rule 403, which states that otherwise relevant and admissible evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. The district court relied on an evidence treatise to support its determination that the circumstances must show that Stubblefield and Malone could have had personal knowledge of Brumley, Sr.'s employment relationship with Hartford. The district court found that the articles did not meet this standard because "[t]here is no clear indication

in these articles as to how the authors acquired the information that they used to make representations regarding Brumley's employment status at the relevant time."

First, the Sixth Circuit has never employed such a requirement in determining whether to admit evidence under the ancient documents exception. Second, it is clear where the authors acquired the relevant information. It is apparent from the context of the Stubblefield article that Stubblefield interviewed Brumley, Sr., and the notes section at the conclusion of Malone's article lists all of Malone's sources, which include Brumley, Sr. and Eugene M. Bartlett, former President of Hartford. Finally, the district court's determination that there is an absence of need for the evidence is not well supported. The district court points to other evidence on the issue, including excerpts from Brumley, Jr.'s book, *I'll Fly Away: The Life of Albert E. Brumley*, which stated that Brumley, Sr. served as a salaried staff writer at Hartford at the time that he wrote the Song. Brumley, Jr., however, testified at trial that the statement in his book was erroneous. Moreover, the 1977 interview between Brumley, Sr. and Brumley, Jr. is the only source, other than the articles, that involves commentary from parties with personal knowledge of Brumley, Sr.'s employment status with Hartford at the time that he wrote the Song. The evidentiary weight to be given to the challenged content in the articles should have been left to the discretion of the jury; therefore, the district court abused its discretion in excluding the articles from evidence.

Because we find that the district court erred in excluding the articles from evidence, we refrain from reaching the remaining issues that Robert raised on appeal.

We AFFIRM the district court's introduction of the 1977 conversation into evidence, REVERSE the district court's exclusion of the Stubblefield and Malone articles, and REMAND for further proceedings.