**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 14a0352n.06**

No. 13-3261

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
*May 02, 2014*
DEBORAH S. HUNT, Clerk

LARRY SCHRACK,                      )
                                    )
    Plaintiff-Appellant,       )     ON APPEAL FROM THE UNITED
                                    )     STATES DISTRICT COURT FOR THE
    v.                          )     SOUTHERN DISTRICT OF OHIO
                                    )
R+L CARRIERS, INC., et al.,         )
                                    )
    Defendants-Appellees,       )

**BEFORE: BATCHELDER, Chief Judge; GRIFFIN, Circuit Judge; BELL, District Judge.**[*]

**BELL, District Judge.** This matter is before the Court on Appellant Larry Schrack's appeal of the jury verdict against him in his Family and Medical Leave Act ("FMLA") retaliation and disability discrimination claims, and the district court's order granting summary judgment on his FMLA interference claim and age discrimination claims.

Two issues are before the Court: (1) did the district court err in finding there was no genuine issue of material fact regarding Appellant's FMLA interference claim? and (2) did the

---

[*]The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

district court err in excluding portions of Eugene Rhodes's testimony from evidence at trial? For the reasons that follow we AFFIRM the judgment of the district court.

**I.**

Appellee R+L Carriers Shared Services, LLC ("R+L")[1] hired Schrack on November 12, 2007, when Schrack was 55 years old. Schrack was hired as a Security Installation Technician within R+L's Security Installation Department. Schrack's job duties were to drive an R+L company vehicle to install and repair fire and security systems at R+L's locations nationwide.

In 2008, Schrack began experiencing symptoms of grogginess and fatigue. On March 23, 2009, Schrack fell asleep in a meeting. R+L gave Schrack a verbal warning and informed him that if he was caught sleeping on the job again, he would be fired. On March 31, 2009, Schrack was on a job at the home of one of R+L's owners, where he was discovered sleeping on a couch. He was not fired on this day, but on April 1, 2009, while still at the same job site, Schrack was discovered sleeping in a company van. He was then terminated.

Soon after, Schrack's daughter called R+L to inform the human resources department that Schrack had been hospitalized and was being treated for narcolepsy. She demanded Schrack be reinstated and given FMLA leave time to recover. R+L forwarded an FMLA packet, which Schrack and his physicians completed and returned. R+L reinstated Schrack and granted him FMLA leave during April and May 2009.

Beginning in May 2009, and continuing through the end of that year, R+L terminated 68 of its employees. Schrack received a release from his physician to return to work in June 2009 and

---

[1]Plaintiff filed his complaint against R+L Carriers, Inc., R+L Carriers, and R+L Carriers Shared Services, LLC. The district court dismissed "R+L Carriers" because that entity does not exist and "R+L Carriers, Inc." because that entity never employed Schrack.

was approved to return to work by R+L benefits manager Scott Armour. R+L, however, requested a more detailed back-to-work release, one that explicitly stated that Schrack would be able to safely operate a vehicle. Schrack's physician sent a more detailed release on June 11, 2009, addressing R+L's concerns. Schrack was terminated on June 12, 2009.

Schrack sued, alleging (1) R+L interfered with his rights to take leave under the FMLA; (2) R+L fired him in retaliation for exercising his FMLA rights; (3) R+L fired him because of a disability, in violation of the Americans with Disabilities Act ("ADA"); and (4) R+L fired him because of his age, in violation of the Age Discrimination in Employment Act ("ADEA").

R+L moved for summary judgment on all claims. Magistrate Judge Karen L. Litkovitz issued a Report and Recommendation ("R&R") that was adopted in whole over R+L's objections. Shrack filed no objections to the R&R, and in fact, filed a response to R+L's objections in which he urged the district court to adopt the R&R. The district court found that no genuine issue of material fact existed with regard to Schrack's claims for age discrimination or interference with his FMLA rights. Specifically, the court found that R+L had demonstrated that it conducted a legitimate reduction in force ("RIF"); that Schrack was terminated as part of the RIF and not because of his age; and that because Schrack was given the full amount of leave available under the FMLA, R+L could not, as a matter of law, have interfered with his FMLA rights.

The court found that genuine factual issues did exist with regard to Schrack's claims of retaliatory firing and discriminatory discharge on account of his disability. In both cases, the court found that although there appeared to be a legitimate RIF, the lack of an objective plan for such, coupled with the circumstantial evidence of discrimination Schrack presented, was enough to create a genuine issue for trial: namely, whether the alleged RIF was a pretext for Schrack's illegal discharge.

3

At trial, attempting to demonstrate the "discriminatory atmosphere" that existed at R+L, Schrack proffered the testimony of Eugene Rhodes, the Senior Director of Human Resources at the time Schrack was discharged. Rhodes's proffered testimony concerned a litany of alleged violations of federal labor laws including: R+L's desire to lower the average age of its workforce to 32; requesting birth dates on applications; refusing to reinstate employees after they used up FMLA leave; terminating employees who had used up their FMLA leave; ignoring sexual harassment; and ignoring gender discrimination. R+L allegedly engaged in these behaviors because, according to Rhodes's second-hand account, they had "never written a check large enough" to encourage compliance with the law. The district judge determined that this testimony was not relevant and that its prejudicial effect outweighed any probative value it might have. Mr. Rhodes was allowed to testify about his limited knowledge of Schrack's discharge and his involvement with the RIF.

## II.

### A. FMLA Interference

To establish a claim for interference under the FMLA, a plaintiff must show: (1) the plaintiff is an eligible employee under the act; (2) the defendant is an employer under the act; (3) the plaintiff is entitled to leave; (4) the plaintiff gave notice of his or her intent to take leave; and (5) the defendant employer denied an FMLA benefit. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012); 29 U.S.C. § 2615(a)(1). A Magistrate Judge issued a Report and Recommendation concluding that Schrack was not denied an FMLA benefit because he received the full 12 weeks of leave to which he was entitled. Schrack did not object, and the district court adopted the R&R as its opinion.

4

On appeal, Schrack contends that the district court erred in concluding he had not been denied an FMLA benefit and entering summary judgment against him. R+L argues that under *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1983), Schrack has waived his right to object to the court's reasoning on his interference claim. Schrack argues that he raised the issue when he moved for a directed verdict at trial, and again on appeal. Schrack contends that he could not appeal this decision of the district court until judgment became final. When questioned at oral argument for authority on his position that this issue was preserved, Schrack's counsel was unable to provide any.

While it is true that Schrack could not appeal the entry of partial summary judgment to this Court before judgment became final, he was obligated to present any objections he had to the R&R before summary judgment was entered in the first place. Because Schrack failed to do this, this issue is not properly before us.

## B.    Witness Rhodes's testimony

The district court excluded Eugene Rhodes's proffered testimony on the basis that it was not relevant and that its probative value was outweighed by the danger of unfair prejudice. We review a challenge to an evidentiary ruling for abuse of discretion. *Brumley v. Albert E. Brumley & Sons, Inc.*, 727 F.3d 574, 577 (6th Cir. 2013). We reverse when the district court "applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *Id.* (quoting *United States v. Martinez*, 430 F.3d 317, 326 (6th Cir. 2005)). As noted above, the district judge stated from the bench that Rhodes's proffered testimony was more prejudicial than probative. Looking to the relevant legal standards, we agree.

Schrack asserts that the excluded testimony was relevant to his case because it was evidence of a discriminatory environment, which would aid in proving his claim that the RIF was a

5

pretext for his illegal discharge. Schrack contends that allowing the jury to hear Rhodes's testimony would enable it to conclude that he was fired in retaliation for using FMLA leave, or in the alternative that he was fired because he is disabled (i.e., narcoleptic) within the meaning of the ADA.

Schrack cites several cases in support of his contention. *See, e.g., Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 393 (6th Cir. 2009) (evidence that supervising officers were generally hostile to promoting women relevant to establish discriminatory environment); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354-55 (6th Cir. 1998) (discriminatory remark of non-supervisor who nonetheless "may have influenced" employment decisions relevant in age discrimination case); *Robinson v. Runyon*, 149 F.3d 507, 513 (6th Cir. 1998) (evidence of a fake employment application containing demeaning racial stereotypes was admissible to demonstrate racially hostile atmosphere); *Polanco v. City of Austin, Tex.*, 78 F3d 968, 980 (5th Cir. 1996) (circumstantial evidence can show discriminatory motive); *Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1103 (8th Cir. 1988) ("Circumstantial proof of discrimination typically includes unflattering testimony about the employer's history and work practices—evidence which in other kinds of cases may well unfairly prejudice the jury against the defendant. In discrimination cases, however, such background evidence may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive."); *Conway v. Electro Switch Corp.*, 825 F.2d 593, 597 (1st Cir. 1987) ("[E]vidence of a corporate state-of-mind or a discriminatory atmosphere is not rendered irrelevant by its failure to coincide precisely with the particular actors or timeframe involved in the specific events that generated a claim of discriminatory treatment.").

R+L counters that any evidence of other "bad acts" is inadmissible as character evidence used to prove conduct in conformity with the character. *See* Fed. R. Evid. 404. It cites several cases in support of this proposition, the most relevant of which is *Schrand v. Federal Pacific Elec. Co.*, 851 F.2d 152 (6th Cir. 1988). In *Schrand*, the plaintiff alleged he had been wrongfully discharged because of his age. *Id.* at 154. At trial, the district judge admitted testimony—over defense counsel's objection—of two former employees of defendant, who testified they were told they had been discharged in part due to their advanced ages. *Id.* at 155. This Court reversed. *Id.* We held that the testimony was not relevant partly because different supervisors allegedly told the witnesses they were too old and not the supervisor who discharged the plaintiff. *Id.* at 156. We also held that introducing evidence of discriminatory behavior directed toward others was too abstract and could serve to confuse the jury. *Id.*

Further guidance comes from *Griffin v. Finkbeiner*, 689 F.3d 584 (6th Cir. 2012). In *Griffin*, we noted that *Schrand*, while still the law of the circuit, had been distinguished within the circuit, as its applicability is limited to cases where the discriminatory conduct occurs in closer proximity to the plaintiff. *Id.* at 598 n.9. In *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379 (2008), the Supreme Court made it clear that the evaluation of "other acts" testimony in employment discrimination cases must be done on a case-by-case basis, and that no per se rule of admissibility or inadmissibility applies. We have explained that a number of factors are relevant to this determination: (1) whether the evidence is logically or reasonably tied to the decision made with respect to the plaintiff; (2) whether the same "bad actors" were involved in the "other" conduct and in the challenged conduct; (3) whether the other acts and the challenged conduct were in close temporal and geographic proximity; (4) whether decision makers within the organization

7

knew of the decisions of others; (5) whether the other affected employees and the plaintiff were similarly situated; and (6) the nature of the employees' allegations.  *Griffin*, 689 F.3d at 599.

In the present case, Schrack's surviving claims at trial were for retaliatory discharge in violation of the FMLA and discriminatory discharge in violation of the ADA.   The jury found in R+L's favor on both claims.

At the outset, we note that under any admissibility test, Rhodes's testimony regarding alleged age and gender discrimination is irrelevant because those issues do not relate to Schrack's surviving claims.   Rhodes's testimony regarding R+L's alleged history of FMLA violations presents a closer question.

Rhodes testified he was instructed by Jeff Copsey, his supervisor in the Human Resources department, not to report his own health issues because "the owners" did not want sick people on the payroll.   Rhodes also testified that Copsey told him that he had been instructed by "the owners" to fire anyone who exhausted his or her FMLA benefits. Rhodes further testified that "staff" routinely complained to him that Copsey would deny or delay their return to work after being cleared for work after an FMLA leave of absence.

At trial, Dale Ellenbarger, the head of Schrack's department, testified that while Schrack was on leave, he was instructed to eliminate one member of his staff as part of the RIF. Ellenbarger chose Schrack for discharge because he was the least senior member of the team. However, because Schrack was on leave at the time, he convinced management not to move forward with the discharge.   Only after Scott Armour approved Schrack to return to work did Ellenbarger terminate him.

Application of the factors identified in *Griffin* favors excluding Rhodes's proffered testimony.   Rhodes's proffered testimony is so vague as to make any logical connection between

8

his allegations and Schrack's firing very attenuated. The only bad actors identified by Rhodes are Jeff Copsey and "the owners," while the only people Schrack has identified as taking adverse action against him were Scott Armour and Dale Ellenbarger. Schrack has in no way connected the actions of Copsey and "the owners" to Armour or Ellenbarger. Schrack has pointed to no evidence that Armour or Ellenbarger knew of or were involved in the relevant alleged bad acts. Schrack has pointed to Rhodes's own fear of losing his position because of his health conditions and complaints of "staff" that Copsey kept them from returning to work after using leave. Rhodes is not similarly situated to Schrack, and the allegation that "staff" complained of being unable to return to work is too vague for this Court to make a determination as to whether such "staff" were similarly situated to Schrack. Overall, Rhodes's allegations are too vague and conclusory to determine if the nature of the claims is similar. The only factor favoring inclusion is the fact that the alleged bad acts occurred at the same time and place as Schrack's discharge.

Because the district judge did not rely on a clearly erroneous finding of fact, improperly apply the law, or use an erroneous legal standard, we cannot conclude a mistake has been made. The district court, therefore, did not abuse its discretion in excluding Rhodes's testimony.

**III.**

Appellant waived his challenge to the R&R's conclusion that summary judgment should be granted on Appellant's FMLA interference claim. The R&R concluded that Appellant "has not shown that defendant interfered with his rights under the FMLA" because a necessary element of his claim—that R+L denied Appellant FMLA–leave benefits to which he was entitled—had not been shown. Appellant then requested that the district court adopt the R&R. The district court did adopt the R&R. Appellant cannot now shift the basis of his FMLA interference claim by

9

arguing not that he was denied a benefit, but that R+L was required to return him to work.   We therefore **AFFIRM** the judgment of the district court.