NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0276n.06

Case No. 18-1611

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 28, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| HLV, LLC, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| VAN BUREN COUNTY, et al., | ) | MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | **OPINION** |
| | ) | |

BEFORE: McKEAGUE, GRIFFIN, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. As many cases do, this one has taken on a new life as it progressed through the courts. What began as a collection action in state court has evolved into a federal civil rights and racketeering suit against a former judge and several attorneys over their conduct in that collection action. It all began when HLV filed the collection action in Van Buren County Circuit Court to recover a $600,000 debt from ELC Leasing and drew Judge Paul Hamre as the presiding judge. HLV and ELC brokered a settlement agreement, under which ELC was to transfer about 600 trailers to HLV to satisfy the debt. Hamre signed off on the agreement, but it soon fell through after ELC thwarted HLV's efforts to recover the trailers.

From there, the action grew more contentious. ELC retained two new attorneys, Kelly Page and Gary Stewart, and around that time, Hamre sua sponte issued several orders enjoining HLV from collecting its debt. Tensions boiled over when HLV's agents visited ELC's offices to retrieve information about the trailers: ELC summoned the police, and Van Buren County

prosecutors later filed criminal charges against two of HLV's agents. Several weeks after the confrontation at ELC's offices, HLV recorded Hamre, Page, and Stewart disparaging HLV's attorneys and discussing the settlement agreement at the end of a telephonic status conference (the three men apparently believed that no one else was on the line). HLV then moved to disqualify Hamre, and within a matter of days, Hamre announced his resignation from the bench.

To be clear, the collection action—a state court matter—is not before this court. Rather, HLV filed a separate suit in federal court against Hamre, Page, Stewart, and others, alleging that the three men conspired to deprive HLV of its Fourteenth Amendment due-process rights. The district court dismissed Hamre as a defendant because of judicial immunity, a decision that HLV appeals. Over time, the district court dismissed still more defendants and claims, leaving ELC's attorney, Gary Stewart, as the lone defendant at trial. While the jury returned a verdict finding that Stewart engaged in a conspiracy to deprive HLV of its constitutional rights, it declined to award punitive damages. HLV now appeals the damages aspect of that verdict, raising three evidentiary objections as grounds for reversal.

Because HLV has not shown that Hamre's conduct—however inappropriate—falls within either of the two narrow exceptions to judicial immunity, we AFFIRM the district court's decision to dismiss Hamre from the suit. And because HLV has failed to show that the district court's evidentiary rulings amount to an abuse of discretion, we AFFIRM those rulings as well.

## I.

### A.

HLV filed a collection action against ELC Leasing, its affiliates, and its owner, William Engel, in Van Buren County Circuit Court, a Michigan state court, and drew Judge Paul Hamre as the presiding judge. In September 2012, the parties stipulated to a settlement agreement to

discharge ELC's debt. ELC apparently could not satisfy the $600,000 debt in cash, but ELC's owner, Engel, had a trailer business and agreed to transfer assets from that business to HLV. Engel signed a bill of sale and assignment of leases to transfer 600 trailers to HLV, but the agreement allowed Engel to retain possession of the trailers for 90 days. During that time, Engel could redeem the trailers by paying off ELC's debt.

One month later, the parties amended the settlement agreement ("October Agreement") by adding these three provisions: (1) if Engel did not transfer all 600 trailers to HLV at the end of the 90-day period, he would pay HLV $2,500 for every trailer that he failed to transfer; (2) during the 90-day period, Engel could not sell or transfer any assets related to the trailer business; and (3) HLV could review all books and records related to the trailer business, provided HLV gave one day's notice. Hamre signed the October Agreement and entered it as an order of the court on October 12, 2012. But when the 90-day period expired, Engel never surrendered all the trailers. Instead, HLV alleges that Engel and ELC undermined its collection efforts by withholding the trailers' titles and removing their identification markers.

Sometime between January and March 2013, Engel and ELC retained two attorneys, Kelly Page and Gary Stewart, to defend them in the collection action. Soon after, Hamre began to issue orders frustrating HLV's ability to collect the trailers. The first came on March 6, 2013, when Hamre issued an ex parte temporary restraining order to enjoin HLV from collecting any more of the trailers from Engel or ELC. Fourteen days later, when the temporary restraining order was set to expire, Hamre held a hearing on two motions: (1) Engel and ELC's motion for an order enjoining HLV from any further collection efforts; and (2) HLV's motion for contempt, which HLV filed against Engel and ELC for violating the parties' October Agreement. Because Hamre

did not rule on either motion from the bench, HLV alleges that the March 6, 2013, temporary restraining order expired on the day of the hearing.

Under the assumption that the temporary restraining order had expired, HLV resumed its efforts to recover the trailers from ELC and Engel on March 21. But one day later, Hamre issued another temporary restraining order that extended the original order until further order of the court. Hamre then issued an "order after hearing" that revised the October Agreement by requiring ELC and Engel to turn over only 347 trailers, not the 600 trailers that the October Agreement had specified.

HLV alleges that Hamre's modification to the October Agreement never extinguished its right to inspect Engel and ELC's books and records related to the trailers. So on April 8, HLV gave Engel notice that he planned to review the records, and the next day, HLV attorney Donovan Visser and HLV representative Robert Baker arrived for the inspection. Things got heated quickly: ELC representatives forcibly confiscated file boxes from Visser and moved a computer into another room to restrict his access. And then the police arrived. ELC employees claimed that HLV's agents had no right to be on ELC's property and showed the police officer a copy of the March 26, 2013, order that had revised the October Agreement. But Visser produced a copy of the October Agreement, which gave HLV the right to inspect ELC's books and records. Confused about which order prevailed, the police officer called Hamre. HLV alleges that Hamre told the police officer that he felt Visser was being deceptive by presenting the October Agreement rather than the later, amended orders—but cautioned that if criminal charges were filed, he would have "no input on that side of the proceedings." (R. 49, First Am. Compl. at ¶ 78.) The police left without making any arrests.

After the confrontation at ELC's offices, Hamre issued a show cause for contempt order against both HLV and Visser and Associates, HLV's law firm. HLV alleges that ELC never filed a motion but that "it is believed that *ex parte* communications with other Defendants did occur," prompting the contempt order. (*Id.* at ¶ 92.) Meanwhile, HLV renewed its motion for contempt against ELC and Engel, and Hamre held a hearing on that motion on May 6, 2013. At that hearing, Hamre denied HLV's motion, granted ELC additional time to try to sell the trailers, and enjoined HLV from selling any of the trailers in its possession. And finally, Hamre scheduled a telephonic status conference for May 10, 2013.

Hamre held the conference as scheduled, but not all participants joined by phone. While HLV's attorneys, Donovan and Donald Visser, called in, ELC's attorneys, Gary Stewart and Kelly Page, participated in person from Hamre's chambers. When the conference began, Hamre allegedly pressured HLV to accept partial payment from ELC, but HLV rejected the suggestion. So Hamre scheduled a hearing on the following Monday to chart the path forward.

HLV alleges that conference reached a natural end, and one of the attorneys participating by phone hung up, making a clicking noise. Hamre, Stewart, and Page apparently thought that all of the other callers were off the line—so they began to speak as though no one else was listening. Two unidentified speakers in Hamre's chambers used obscenities to describe Donovan and Donald Visser, and Hamre expressed agreement. Hamre also discussed the case, telling the attorneys that ELC did not have to transfer all 600 trailers to HLV. At one point, Hamre's assistant, Peggy Grote, could be heard telling Hamre that she had a copy of a report from HLV detailing the status of the trailers. But Hamre told her to throw the report in the garbage and that he planned to tell HLV at the forthcoming hearing, "it's the court's intention to extend [the injunction], tell me why I shouldn't." (*Id.* at ¶ 120.) As it turned out, others were listening. Unknown to Hamre, Stewart,

or Page, HLV's attorneys remained on the line and transcribed the call. Unsurprisingly, HLV's attorneys moved to disqualify Hamre as a judge and Stewart and Page as ELC's attorneys on May 13.

Not long after HLV filed that motion, HLV attorney Donovan Visser and HLV representative Robert Baker received phone calls from a police officer who had responded to the confrontation at ELC's offices. The officer informed both men that the county prosecutor had issued warrants for their arrest—Visser on charges of trespassing and assault and Baker on a trespassing charge—stemming from the confrontation. Although the prosecutor filed the arrest warrants on May 8, 2013, Visser and Baker were not arraigned until May 22 and June 5, respectively. HLV alleges that its motion to disqualify Hamre was the driving force behind the decision to prosecute Visser and Baker.[1]

Days later, Hamre ruled on the motion to disqualify. Although he denied that any ex parte communications took place, he recused himself from the case—but not because HLV moved to disqualify him. Rather, Hamre expressed concern that he might be a witness in the prosecution of Donovan Visser and so stepped aside to avoid any conflict. The case was reassigned to a different judge, who vacated all orders that Hamre had issued after the October Agreement. As to Hamre, he announced his retirement in June 2013 and stepped down from the bench in August 2013.

**B.**

HLV, Landworthy Container, and Robert Baker[2] filed in federal court a seven-count complaint against Paul Hamre, Kelly Page, Gary Stewart, the Page & Stewart Law Firm ("Page &

---

[1] Prosecutors dropped the charge against Baker on June 19, 2013. The court granted a directed verdict to Visser on the trespass charge, but he stood trial on the assault charge. That trial ended with a hung jury.

[2] Landworthy Container and Robert Baker did not appeal the district court's judgment and are therefore not parties on appeal.

Stewart"), Van Buren County, Michigan, the Village of Paw Paw, Michigan, Peggy Grote, Michael Bedford, and Michael McKay.[3] HLV alleged these claims: (1) Hamre, Page, Stewart, Bedford, McKay, Grote, and Page & Stewart engaged in racketeering activity in violation of 18 U.S.C. § 1962(c) ("RICO"); (2) Hamre, Page, Stewart, Bedford, McKay, and Page & Stewart conspired to violate RICO under 18 U.S.C. § 1962(d); (3) Grote aided and abetted the RICO conspiracy; (4) Bedford, McKay, Page, Stewart, Hamre, the Village of Paw Paw, and Van Buren County are liable under 42 U.S.C. § 1983 for violating Baker's Fourth and Fourteenth Amendment rights and HLV's Fourteenth Amendment rights; (5) Page, Stewart, and Page & Stewart conspired to violate HLV's Fourteenth Amendment rights; (6) Van Buren County, Bedford, and McKay maliciously prosecuted Donovan Visser and Robert Baker; and (7) Hamre tortiously interfered with the October Agreement.

Claiming absolute judicial immunity, Hamre moved to dismiss HLV's claims. The district court granted that motion, effectively removing Hamre as a party to HLV's suit. The district court also dismissed all claims against Grote, Bedford, McKay, Van Buren County, and the Village of Paw Paw, as well as all of HLV's RICO-related claims as to all defendants. HLV appeals the district court's decision to dismiss Hamre from this lawsuit.

### C.

HLV, Landworthy Container, and Robert Baker filed a second amended complaint, naming Kelly Page, Gary Stewart, and Page & Stewart ("Defendants") as defendants. That complaint's one claim, arising under 42 U.S.C. § 1983, alleges that Defendants conspired with Hamre and Van Buren County prosecutors Michael Bedford and Michael McKay to violate HLV's and Baker's

---

[3] Michael Bedford is the Van Buren County Prosecutor, and Michael McKay is the Van Buren County Assistant Prosecuting Attorney.

constitutional rights. HLV contends that Defendants gave Hamre office space and personal vacations to Florida in exchange for favorable rulings from the bench, and that Defendants took Bedford on hunting trips, which influenced his and McKay's decision to file criminal charges against Donovan Visser and Robert Baker. This conduct, HLV alleges, violated its Fourteenth Amendment rights and Baker's Fourth and Fourteenth Amendment rights.

The district court granted partial summary judgment to Defendants, dismissing the theory that they conspired with Bedford and McKay to press criminal charges against Visser and Baker. But the court allowed HLV to pursue its theory that Defendants conspired with Hamre to deprive them of their constitutional right to due-process.[4]

Just before trial, the court dismissed Kelly Page and Page & Stewart from the suit, leaving Gary Stewart as the lone defendant. The case against Stewart went to trial, and the jury returned a verdict finding that HLV proved a conspiracy between Stewart and Hamre or between Stewart, Page, and Hamre. The jury, however, determined that HLV had not shown that Stewart's conduct was motivated by evil motive or intent or that it reflected reckless or callous indifference to HLV's due-process rights and thus could not award punitive damages. The court then entered judgment, awarding HLV one dollar in nominal damages.

HLV appeals three evidentiary rulings that the district court made during or on the eve of trial, arguing that those rulings undermined its ability to present its damages to the jury.

## II.

We review de novo a district court's decision to grant a motion to dismiss for failure to state a claim. *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 475 (6th Cir. 2008). In

---

[4] The district court ultimately dismissed Landworthy Container and Robert Baker as plaintiffs, leaving HLV as the only surviving plaintiff. They are not parties to this appeal.

doing so, we must construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true and drawing all reasonable inferences in the plaintiff's favor. *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

Both parties acknowledge the general rule that judicial officers such as Hamre are immune from suits seeking damages. *See, e.g.*, *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991) (per curiam). Judicial immunity shields judicial officers not simply from a judgment awarding damages—but also from the suit itself. *Id.* at 11. And the doctrine is expansive, applying even when a party alleges that the judge acted maliciously or violated its constitutional rights. *Bright v. Gallia Cty.*, 753 F.3d 639, 648–49 (6th Cir. 2014).

Judicial immunity is indispensable to our legal system. If judges could be liable for their judicial decisions, they would almost certainly face an "avalanche of suits, most of them frivolous but vexatious," from losing parties in cases over which they presided. *Forrester v. White*, 484 U.S. 219, 226 (1988) (citation omitted). The concern is not simply that disgruntled litigants would barrage judges and the courts with still more litigation—but also that the threat of liability "would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits." *Id.* at 227 (citation omitted). Indeed, the Supreme Court cautioned that judges would act "timid[ly]" without immunity and that this behavior "would manifestly detract from independent and impartial adjudication." *Id.* Immunizing judges from civil liability helps prevent that reality by allowing judges to "exercise their functions with independence and without fear of consequence." *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (citation and internal quotation marks omitted). But there is a cost: one incidental effect of judicial immunity is that judges who have abused their position may escape civil liability.

There are two exceptions to judicial immunity, and HLV claims that both exceptions apply here. First, a judge may be held liable for "nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity." *Mireles*, 502 U.S. at 11 (citation omitted). Second, a judge may be held liable for judicial acts he takes "in the complete absence of all jurisdiction." *Id.* at 12 (citations omitted). We consider each exception in turn.

*Nonjudicial Act*. When a plaintiff alleges that a judge engaged in nonjudicial action, the court must consider whether the allegedly nonjudicial act is "truly judicial" or one that simply "happen[ed] to have been done" by a judge. *Mann v. Conlin*, 22 F.3d 100, 103–04 (6th Cir. 1994) (citation omitted). The "application of judicial immunity is simple and non-controversial" if the act is paradigmatically judicial, such as resolving a dispute between two parties. *Barrett v. Harrington*, 130 F.3d 246, 255 (6th Cir. 1997). By contrast, action that is "not an adjudication between parties . . . is less likely [to] be deemed judicial" and may warrant subjecting the judge to civil liability. *Barnes v. Winchell*, 105 F.3d 1111, 1116 (6th Cir. 1997) (citing *Cameron v. Seitz*, 38 F.3d 264, 271 (6th Cir. 1994)).

HLV alleges that Hamre engaged in nonjudicial action by encouraging the prosecution of Donovan Visser and Robert Baker. To recap, police responded to ELC's offices and heard conflicting accounts about whether HLV representatives had any right to inspect ELC's books and records. Police did not arrest either man at the scene, and prosecutors waited for a month before charging Visser and Baker. HLV, however, speculates that Hamre engaged in ex parte conversations with prosecutors and asks this court to infer that he encouraged prosecutors to file criminal charges—action they allege was nonjudicial.

To say that a judge engaged in nonjudicial action, of course, presumes some action on the part of the judge. But HLV has not plausibly alleged *any* action that might fall on the nonjudicial

10

side of the judicial-nonjudicial divide. HLV theorizes that Hamre sought retribution after HLV did not accept his proposed modification to the October Agreement and that Hamre must have engaged in ex parte communications—either with police or county prosecutors—about Baker and Visser. Yet HLV concedes that it does not know who decided to press charges or why prosecutors made that decision, noting that "the request for a warrant somehow made its way to the prosecutor's office." (Appellant Br. at 25.)

On a motion to dismiss, we must draw all *reasonable* inferences in favor of HLV. Still, we "need not accept as true . . . unwarranted factual inferences," which is exactly what HLV asks us to do. *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir. 2010) (citation and quotation marks omitted). HLV has not alleged plausible facts rising above mere speculation to suggest that Hamre engaged in any nonjudicial action that would warrant piercing the shield of judicial immunity. Thus, HLV cannot show that Hamre's conduct falls under the "nonjudicial action" exception to judicial immunity.

*Absence of Jurisdiction*. The second exception to judicial immunity arises when a judge acts without any jurisdiction. *Mireles*, 502 U.S. at 12. We must construe a judge's jurisdiction broadly: "Only in the absence of subject matter jurisdiction are judicial actors devoid of the shield of immunity." *Holloway v. Brush*, 220 F.3d 767, 773 (6th Cir. 2000) (en banc) (citations omitted). For example, we explained that a criminal court judge would be immune from liability if she convicted a defendant of a nonexistent crime. *Barnes*, 105 F.3d at 1122. To be sure, the judge's action may have *exceeded* her jurisdiction, but she would have still retained jurisdiction over the matter. *Id.* By contrast, we suggested that if a probate court judge had committed the same act, he would have acted in the absence of jurisdiction—and thus would have been subject to liability— because he never had subject-matter jurisdiction over the criminal matter. *Id.*

HLV does not argue that Hamre lacked subject-matter jurisdiction over the collection action.  Instead, HLV claims that Hamre misapplied the law.  HLV's primary complaint is that Hamre extended the duration of the March 22, 2013, temporary restraining order until further order of the Court, even though a temporary restraining order dissolves after fourteen days under Michigan law.  *See* MCR 3.310(B)(3).  HLV also objects to Hamre's April 10, 2013, show-cause order, which Hamre issued after the confrontation at ELC's offices.  HLV describes the order as "vindictive" and faults Hamre for initiating the proceeding before any party had submitted an affidavit describing what had occurred.  (Appellant Br. at 27.)

Whether Hamre misapplied the law or acted out of malice toward Baker and HLV is secondary to this court's threshold inquiry:  Did Hamre have subject-matter jurisdiction over the collection dispute?  The answer is yes, and HLV concedes as much, acknowledging that "Defendant Hamre had jurisdiction over the matter before him." (*Id.* at 26.)  That concession is self-defeating because "where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes." *Barnes*, 105 F.3d at 1122.

HLV has not shown that Hamre's conduct falls within either of the two narrow exceptions to the general presumption of judicial immunity.  For these reasons, we affirm the district court's dismissal of HLV's claims against Hamre.

### III.

HLV argues that the district court made three erroneous evidentiary rulings, either during or on the eve of trial.  We review those rulings for abuse of discretion.  *Brumley v. Albert E. Brumley & Sons, Inc.*, 727 F.3d 574, 577 (6th Cir. 2013).  That standard is forgiving:  a trial court abuses its discretion only when it "relies upon clearly erroneous factual findings, applies the law improperly, or uses an erroneous legal standard." *Wikol ex rel. Wikol v. Birmingham Pub. Sch.*

*Bd. of Educ.*, 360 F.3d 604, 611 (6th Cir. 2004) (citing *Phelan v. Bell*, 8 F.3d 369, 373 (6th Cir. 1993)). And even if the district court abused its discretion, we will not order a new trial if the evidentiary ruling was harmless. *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 514 (6th Cir. 1998). Indeed, a new trial "will not be granted unless the evidence would have caused a different outcome at trial." *Id.* (citations omitted). We consider each evidentiary ruling in turn.

**A.**

HLV's first objection concerns its attorneys' fees for the collection action and the related prosecutions of Donovan Visser and Robert Baker. The district court found that HLV failed to provide complete information in discovery about the attorneys' fees—including any methodology for how it calculated those fees—as Federal Rule of Civil Procedure 26 requires. Thus, the court excluded evidence related to attorneys' fees and barred HLV from seeking those fees as damages at trial.

HLV's mandatory initial disclosures under Rule 26 included an "initial disclosure of computations of damages." As part of its damages, HLV sought $264,000 in attorneys' fees that it incurred in the state court action. After receiving HLV's disclosures, Stewart made several attempts to secure information supporting that claim, as well as HLV's methods for calculating its fees. First, Stewart sent HLV a request for production to collect all documents establishing damages in the action. HLV responded that the documents describing its attorneys' fees were protected work product but reiterated that its fees were $264,000. Next, Stewart tried to obtain relevant documents by serving HLV's owner, Harold Voorhees, with a deposition *duces tecum*, but that did not succeed, either. Voorhees testified at his deposition that he had no responsive documents and that if any existed, HLV's attorneys would have them. HLV ultimately sent

Stewart invoices for the attorneys' fees it sought to recover, but those invoices were heavily redacted, containing only the amount charged and the dates of service.[5]

About one month before trial, Stewart moved in limine to exclude evidence about the attorneys' fees from trial. The district court granted the motion and denied HLV's motion for reconsideration. HLV appeals that decision.

A party seeking damages must provide certain information to the opposing party before trial, including:

> [A] computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered . . . .

Fed. R. Civ. P. 26(a)(1)(A)(iii). And the consequences of not complying with that rule can be steep: the court may sanction the noncomplying party by excluding the non-disclosed information at trial, which the district court did here. *See* Fed. R. Civ. P. 37(c)(1).

As the district court correctly concluded, HLV failed to provide Stewart with enough documentation about its requested attorneys' fees to satisfy its pretrial disclosure obligations. After Stewart repeatedly asked for documents from HLV that supported its attorneys' fees request, HLV ultimately turned over redacted invoices that its law firm had generated. But those invoices provided no description of the legal services that HLV paid for—and thus gave Stewart no way of knowing which fees HLV incurred because of the alleged conspiracy.

---

[5] The district court also noted that HLV sent additional billing records that "apparently included more information and fewer redactions" in December 2017. (R. 431, Order at PageID #6783–84.) But HLV never submitted those records to the district court, and they are not part of the record. (*Id.*)

The lack of detail in HLV's invoices is especially troublesome here because HLV sought the full $264,000 in attorneys' fees it incurred during the underlying action. That figure, however, is overinclusive. For one, HLV filed its collection action several months before ELC retained Stewart to defend it in the action. In other words, HLV began incurring attorneys' fees before Stewart was ever involved with the case—so at least some of HLV's fees are unrelated to the alleged conspiracy between Stewart and Hamre. Moreover, the district court noted that HLV had recovered some of its attorneys' fees through a 2014 state-court judgment against ELC, offering still more evidence that the $264,000 figure is flawed. With only the redacted invoices, Stewart was left in the dark.

While the "usual remedy for noncompliance with Rule 26(a)" is "exclusion of [the] late or undisclosed evidence," that sanction is not mandatory. *Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015). A party may avoid sanctions if it can show that its failure to make a timely disclosure is "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In *Howe*, we adopted the Fourth Circuit's five-factor test to determine whether the omitted or late disclosure is substantially justified or harmless, instructing courts to consider:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe*, 801 F.3d at 748 (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396–97 (4th Cir. 2014)). Here, the district court applied the five-factor *Howe* test and concluded that HLV's failure to disclose was not substantially justified or harmless. Acknowledging Stewart's repeated attempts to solicit more information on the fees (from as far back as August 2016), the district court explained that HLV still had not provided sufficient documentation of the fees it

sought to recover, even as trial loomed. Thus, the district court concluded that Stewart would be prejudiced if HLV could seek those fees.

On appeal, HLV has not shown that the district court abused its discretion when it excluded evidence of HLV's attorneys' fees in the collection action, nor has HLV made any showing that its failure to disclose this information was substantially justified or harmless. We agree with the district court's decision to exclude the evidence and find no abuse of discretion.

**B.**

HLV next argues that the district court abused its discretion by excluding testimony from its proposed expert witness, Michal Sajdak. Before trial, HLV and Defendants agreed to retain Elijah, Ltd., a third-party technology consultant, to examine the contents of Hamre's computer and to distribute relevant information from that computer to the parties. About one month before trial began, HLV submitted its proposed final pretrial order, in which it identified Sajdak, an Elijah manager, as an expert witness. According to HLV, the sole purpose of Sajdak's testimony was to authenticate metadata for several documents that Hamre had created. Stewart objected to including Sajdak as an expert witness because HLV never disclosed him as an expert, and the court granted that objection.

At trial, HLV's counsel asked Hamre about two documents that he authored on his computer: his resignation letter and notes he typed about a conversation with assistant Peggy Grote. Hamre admitted to having drafted both documents on his computer but could not recall exactly when. So in a sidebar, HLV asked to introduce the metadata evidence to rebut Hamre's testimony and establish the exact dates that Hamre had created the two documents. The district court, however, denied the request. Although Hamre could not recall when he created the

documents, the district court found that the metadata evidence was not necessarily inconsistent with his testimony and held that HLV could not use the evidence as a form of rebuttal.

The metadata issue surfaced once more when Donald Visser, one of HLV's attorneys in the collection action, testified at trial. On cross-examination, Stewart's counsel asked Visser whether he ever sought communications between Hamre, Page, and Stewart. Visser responded that Hamre's computer was "scrubbed, totally wiped clean with just a few items restored to the computer." (R. 531, Tr. at PageID #8781.) Soon after, HLV's counsel again asked to call Sajdak, arguing that because Stewart's counsel put the subject of Hamre's computer at issue, HLV should have been able to introduce expert testimony about the computer's metadata. Noting that the issue "was close," the court agreed to review the relevant portion of the trial transcript before making a ruling. (*Id.* at PageID #8782.) Nonetheless, the court later denied the request, explaining that the questioning from Stewart's counsel was not specific enough to implicate the expert witness's findings about Hamre's computer.

On appeal, HLV argues that the district court abused its discretion by not allowing it to use Sajdak's testimony—or a copy of Sajdak's report—to rebut the testimony of two witnesses, Hamre and Visser. But the Federal Rules of Civil Procedure foreclose HLV's argument. Before a party can introduce expert testimony at trial, it must disclose the expert "at least 90 days before the date set for trial." Fed. R. Civ. P. 26(a)(2)(D)(ii). And if the party fails to make a timely disclosure, the undisclosed witness cannot testify at trial "unless the failure [to disclose] was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). HLV waited until the 90-day deadline passed before it disclosed Sajdak as a testifying expert but makes no showing that its failure to disclose Sajdak's identity was substantially justified or harmless—or that the district court otherwise abused its discretion in excluding the testimony.

And even if the district court erred, the error was harmless. Recall that the jury concluded that Stewart did not act with evil motive or reckless indifference to HLV's due-process rights and therefore could not award punitive damages. Because HLV challenges the district court's evidentiary ruling, it must show that the outcome at trial would have been different had the district court admitted the metadata evidence. *See, e.g.*, *Polk v. Yellow Freight Sys., Inc.*, 876 F.2d 527, 532 (6th Cir. 1989). HLV fails to establish how that evidence—which simply would have established *when* Hamre drafted two documents that he *admitted to drafting*—would have changed the jury's mind about Stewart's conduct. Thus, we affirm the district court's ruling.

### C.

The third and final alleged evidentiary error concerns the criminal charges against Donovan Visser and Robert Baker. When he was a defendant to the suit, Kelly Page moved in limine to exclude evidence about Van Buren County prosecutors Michael Bedford and Michael McKay, including that they filed charges against Visser and Baker. Stewart joined that motion and supplemented it with a response of his own, in which he argued that evidence about the criminal charges was not relevant to the theory that he and Page conspired with Hamre to violate HLV's due-process rights. Stewart also argued that any evidence about an alleged conspiracy between Page, Stewart, and the Van Buren County prosecutors could confuse the jury about the only issue at trial—the alleged conspiracy between Page, Stewart, and Hamre—and was therefore inadmissible under Federal Rule of Evidence 403. After hearing oral argument on the motion, the district court issued an order to exclude evidence about the criminal charges against Visser and Baker. HLV appeals that decision.

We do not know whether the district court granted Stewart's motion because the evidence was irrelevant or because the evidence was potentially confusing. In either case, the district court

did not abuse its discretion. Under the Federal Rules of Evidence, "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Again, the issue at trial was whether Stewart conspired with Hamre to deprive HLV of its due-process rights. Yet HLV fails to show how evidence that Van Buren County prosecutors charged Visser and Baker—both nonparties to the suit—would have helped the jury resolve the issue before it, much less that the evidence would have changed the outcome at trial.

Alternatively, HLV fails to show that the district court abused its discretion if we assume that it excluded the evidence under Federal Rule of Evidence 403. Under that rule, the district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Evidence about a separate alleged conspiracy—one that the district court determined could not support HLV's § 1983 claim—could have confused the jury about the conspiracy at issue at trial. Owing considerable deference to the district court's decision, we conclude that the court acted firmly within its discretion to exclude the evidence at trial.

## IV.

We AFFIRM the district court's decision to dismiss Judge Paul Hamre because of judicial immunity, as well as the district court's three evidentiary rulings.